J-A03034-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WAYNE DARBY | : | No. 946 EDA 2021 |

Appeal from the Order Entered April 19, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0003038-2020

BEFORE:  STABILE, J., DUBOW, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:                    **FILED FEBRUARY 9, 2022**

The Commonwealth appeals from the order entered in the Philadelphia County Court of Common Pleas granting Wayne Darby's (Appellee) motion to quash, *inter alia*, gun and assault charges filed against him.[1]   The Commonwealth argues the trial court erred in finding insufficient evidence to establish a *prima facie* case on the charged crimes.  After careful review, we affirm.

On April 17, 2020, Appellee was charged with four counts each of aggravated assault, simple assault, and reckless endangerment of another person (REAP), and one count each of possession of an instrument of crime

---

[1] This appeal from an order discharging an accused is properly before us. ***See Comwealth v. Lambert***, 244 A.3d 38, 41 (Pa. Super. 2020) (an order discharging an accused constitutes a final order subject to appellate review) (citation omitted), *appeal denied*, 260 A.3d 71.

(PIC), persons prohibited from possessing a firearm, carrying a firearm without a license, and carrying a firearm on the public streets of Philadelphia after a purported car chase and shooting.[2]

A preliminary hearing was held by the Honorable Richard J. Gordon, where the Commonwealth presented the following evidence. Philadelphia Police Officer Ronald Jackson testified that on February 14, 2020, he was parked on 37th Street facing Haverford Avenue in Philadelphia, Pennsylvania. N.T. Preliminary H'rg, 10/21/20, at 4. Around 7:20 p.m., he observed two vehicles, a white Jeep and a "dark-colored SUV[,]" traveling the wrong way down Haverford Avenue "at a high rate of speed." *Id.* at 4-5, 15. About a minute after he lost sight of both vehicles, he received a call about a possible shooting at 31st Street and Haverford Avenue. *Id.* at 6-7. When he responded, he saw the same white Jeep had crashed into a chain link fence. *Id.* at 5. Officer Jackson observed Appellee, the sole occupant of the vehicle, being removed through the passenger side door by other officers. *Id.* at 5-6. Officer Jackson noticed "one spent shell casing" inside the vehicle and "a bullet hole in a parked unoccupied vehicle on the corner of 31st and Haverford Avenue" about "30 feet" away from the white Jeep. *Id.* at 8, 10. Officer Jackson admitted he did not know how many passengers were in the white Jeep prior to the crash due to the "tinted windows" and "the high rate of

---

[2] 18 Pa.C.S. §§ 2702(a)(1), 2701(a)(1), 2705, 907(a), 6105(a)(1), 6106(a)(1), 6108, respectively.

speed" at which the vehicle was traveling. ***See id.*** at 12-13. Officer Jackson never observed or recovered a gun from Appellee or the white Jeep. ***Id.*** at 17.

Philadelphia Police Detective Dennis Slobodian testified that he later "assisted" in executing a search warrant on the white Jeep. N.T., Preliminary H'rg, at 18. Det. Slobodian observed "two bullet holes in the front passenger door" of the vehicle. ***Id.*** He also recovered a car rental agreement in the name of "Keith Darby" from the white Jeep as well as "two FCCs;"[3] one "from the driver's seat" and one "from all the way in the back where you would put luggage or groceries." ***Id.*** at 22-23, 27, 52. When searching the vehicle, Det. Slobodian noticed the "front passenger side window" was rolled down. ***Id.*** 23-24. After rolling the window up, he observed a bullet hole in the window that lined up with one of the holes in the vehicle's door. ***Id.*** at 24-25. There were no bullet holes on the exterior of the white Jeep. ***Id.*** at 25-27.

Philadelphia Police Detective Joseph Moresi testified that police located a red Dodge Durango, the "dark-colored SUV[,]" at "40th and Lancaster . . . a block" from the white Jeep.[4] N.T., Preliminary H'rg, at 5, 42. Det. Moresi later searched the red Dodge and recovered "mail with [Appellee's] name on it from the rear cargo area in the glove box." ***Id.*** at 43-44. He later

---

[3] An FCC is a fired cartridge casing, expelled from a firearm upon discharge.

[4] Det. Moresi also stated the red Dodge "crashed at 48th and Lancaster." N.T. Preliminary H'rg, at 31.

determined Appellee formerly owned the red Dodge. *Id.* at 47. Officers did not recover any FCCs from the inside or around the red Dodge. *Id.* at 49. Det. Moresi then interviewed S.F., one of the passengers from the red Dodge.[5] *Id.* at 32, 41. S.F. did not testify at the preliminary hearing.

Finally, the Commonwealth introduced Appellee's prior record, consisting of a guilty plea for a 2005 felony robbery, and a "certificate of nonlicensure showing [Appellee] did not have a license to possess or carry a firearm" in Philadelphia. N.T., Preliminary H'rg, at 53. Appellee stipulated to his prior record and did not offer any evidence. *Id.*

Judge Gordon held Appellee for court on all charges. On November 12, 2020, Appellee filed a motion to quash the charges, arguing the Commonwealth's evidence was "wholly insufficient to establish the required elements for any of the charged offenses." Appellee's Motion to Quash, 11/12/20, at 2 (unpaginated). The motion to quash was heard by the distinguished Philadelphia Court of Common Pleas jurist, the Honorable Jeffrey P. Minehart.

Judge Minehart conducted a hearing on April 19, 2021, at which time the Commonwealth presented the testimony of T.T.S., another passenger in the red Dodge, during which the following exchange took place:

---

[5] It is not apparent from Det. Moresi's testimony whether he first interviewed S.F. or searched the red Dodge.

> [Commonwealth]: So while you were in that car, did you hear any gunshots? . . .
>
> [T.T.S.]: Yes. . . .
>
> [Commonwealth]: Can you tell me when you heard that?
>
> [T.T.S.]: I heard it as soon as we like – . . . I heard it when we was driving. [sic.]
>
> [Commonwealth]: [ ] You said you heard it as soon as you drove by something?
>
> [T.T.S.]: Yes.
>
> [Commonwealth]: All right. And how many [gunshots] did you hear?
>
> [T.T.S.]: One.
>
> [Commonwealth]: And after you heard that, what happened?
>
> [T.T.S.]: We got into a car accident.

N.T., 4/19/21, at 7. T.T.S. also stated there were four people in the red Dodge that day. *Id.* at 8-9. She did not say where the shot came from or identify anyone who may have fired a gun.

The trial court granted Appellee's motion to quash all charges. N.T., 4/19/21, at 18. The Commonwealth filed a motion for reconsideration on April 28, 2021, followed by a notice of appeal on May 9, 2021.[6] The presiding Judge, the Honorable Jeffrey P. Minehart, retired before the Commonwealth filed its appeal, and thus did not order a Pa.R.A.P. 1925(b) statement or provide this Court with a Pa.R.A.P. 1925(b) opinion. Because this does not hinder our review, we address the Commonwealth's claim on the merits.

---

[6] The record does not indicate that the trial court ruled on the Commonwealth's motion for reconsideration.

- 5 -

The Commonwealth raises one issue on appeal:

Did the [trial] court err in ruling that the evidence was insufficient to establish a *prima facie* case that [Appellee] committed the charged crimes, where the evidence, properly viewed in the light most favorable to the Commonwealth, established that [Appellee] engaged in a high-speed chase of another SUV traveling the wrong way down a public street and fired several shots at the other SUV's four occupants?

Commonwealth's Brief at 4.

In its sole claim on appeal, the Commonwealth argues the trial court erred in quashing all charges because it established a *prima facie* case at Appellee's preliminary hearing. Commonwealth's Brief at 10. A motion to quash is "the equivalent in Philadelphia practice of a pre-trial writ of *habeas corpus*." **Commonwealth v. Dantzler**, 135 A.3d 1109, 1111 (Pa. Super. 2016). Further:

We review a decision to grant a pre-trial petition for a writ of *habeas corpus* by examining the evidence and reasonable inferences derived therefrom in a light most favorable to the Commonwealth. In **Commonwealth v. Karetny**, [ ] 880 A.2d 505 (Pa. 2005), our Supreme Court found that this Court erred in applying an abuse of discretion standard in considering a pre-trial *habeas* matter to determine whether the Commonwealth had provided *prima facie* evidence. The **Karetny** Court opined, "the Commonwealth's *prima facie* case for a charged crime is a question of law as to which an appellate court's review is plenary." **Id.** at 513; **see also Commonwealth v. Huggins**, [ ] 836 A.2d 862, 865 (Pa. 2003) ("The question of the evidentiary sufficiency of the Commonwealth's *prima facie* case is one of law[.]"). The [ ] Court in **Karetny** continued, "[i]ndeed, the trial court is afforded no discretion in ascertaining whether, as a matter of law and in light of the facts presented to it, the Commonwealth has carried its pre-trial, *prima facie* burden to make out the elements of a charged crime." **Karetny,** [880 A.2d] at 513. Hence, we are not bound by the legal determinations of the trial court. . . .

- 6 -

A pre-trial *habeas corpus* motion is the proper means for testing whether the Commonwealth has sufficient evidence to establish a *prima facie* case. "To demonstrate that a *prima facie* case exists, the Commonwealth must produce evidence of every material element of the charged offense(s) as well as the defendant's complicity therein." To "meet its burden, the Commonwealth may utilize the evidence presented at the preliminary hearing and also may submit additional proof."

*Dantzler*, 135 A.3d at 1111-12 (some citations omitted).

The Commonwealth avers, that when reviewing the evidence in the light most favorable to the Commonwealth, it presented sufficient evidence that

(1) [Appellee] was the sole occupant and driver of the white Jeep; (2) there were four people in the red Dodge; (3) the Jeep pursued the Dodge for several blocks at high speeds the wrong way down Haverford Avenue until they arrived at a dead end; (4) the Dodge turned onto 31st Street, the Jeep crashed on the hill at the dead end; and (5) [Appellee] shot at the occupants of the fleeing Dodge through the Jeep's front passenger[ ] side door and window.

Commonwealth's Brief at 11-12. The Commonwealth also claims it established Appellee was ineligible to carry a firearm, did not have a license to carry a firearm, and "fired multiple shots from his white Jeep at the four occupants of the fleeing red Dodge on a public street in Philadelphia." *Id.* at 10.

As noted above, Appellee was charged with four counts each of aggravated assault, simple assault, and REAP, and one count each of PIC and persons prohibited from possessing a firearm, carrying a firearm without a license, and carrying a firearm on the public streets of Philadelphia.

A person commits aggravated assault if they "attempt[ ] to cause serious bodily injury to another." 18 Pa.C.S. § 2702(a)(1). To prove the

lesser included offense of simple assault, the Commonwealth must establish that, the defendant "attempt[ed] to cause . . . bodily injury to another[.]" 18 Pa.C.S. § 2701(a)(1). To commit REAP, a violator must "recklessly engage[ ] in conduct which places [ ] another person in danger of death or serious bodily injury." 18 Pa.C.S. § 2705. A person violates Section 907(a) when they "possess[ ] any instrument of crime with intent to employ it criminally." 18 Pa.C.S. § 907(a).

To establish a violation of Section 6105, a person must "ha[ve] been convicted of an offense enumerated in [Section 6105](b)[,]" including felony robbery, and possessed a firearm. 18 Pa.C.S. § 6105(a)(1). A person violates Section 6106 if he "carries a firearm in any vehicle . . . without a valid and lawfully issued license." 18 Pa.C.S. § 6106(a)(1). A person violates Section 6108 if they "carry a firearm . . . at any time upon the public streets" of Philadelphia without a license. 18 Pa.C.S. § 6108.

Upon our review, we agree with the trial court's determination that the Commonwealth's witnesses at both hearings failed to establish every element of each crime charged. Collectively, the officers' testimony established: a white Jeep and a red Dodge were speeding down Haverford Avenue in the wrong direction before crashing;[7] by the time officers responded to the white Jeep's crash location, Appellee was the only passenger in the car; officers

---

[7] Contrary to the Commonwealth's characterization, no witness testified the white Jeep "pursued" the red Dodge for several blocks. *See* Commonwealth's Brief at 11.

observed two bullet holes on the interior of the front passenger door and one bullet hole in the front passenger window of the white Jeep; there were no bullet holes on the exterior of the white Jeep; officers recovered two FCCs from the white Jeep; and Appellee has a prior conviction for robbery, and no license to possess a firearm. *See* N.T., Preliminary H'rg, at 4-8, 18, 23-27, 52-53. None of the testifying officers saw a gun or heard a gunshot. None of the witnesses saw Appellee with a gun or firing a shot. Moreover, the Commonwealth offered no evidence establishing when the Jeep sustained the bullet holes or how long the FCCs were in the car. The Commonwealth did not present any evidence connecting Appellee to a gun.

After Appellee filed a motion to quash, the trial court held a hearing where the Commonwealth presented additional evidence. The testimony presented at the motion to quash hearing was similarly ineffective because only one witness, T.T.S., testified. She stated that she was in the red Dodge with three other passengers. N.T., 4/19/21, at 6, 8. Although she testified she heard "one" gunshot, T.T.S. did not say at what moment during the incident or from what direction she heard the gunshot, nor did she see a flash from a gunshot. *Id.* at 7. At no point did T.T.S. see a gun or identify Appellee as the shooter, or even the driver of the white Jeep. Additionally, no witnesses testified to observing gun damage to the red Dodge. Viewing this evidence in the light most favorable to the Commonwealth, none of the above testimony, even circumstantially, established Appellee possessed a gun during this incident, that the gunshot T.T.S. heard was aimed or directed at the red

Dodge, or that Appellee was the person in possession of a gun and used it to shoot at anyone in the red Dodge.

Because we agree with the trial court's conclusion, the evidence did not establish "every material element of the charged offense(s) as well as [Appellee's] complicity therein[,]" we affirm. **_See Dantzler_**, 135 A.3d at 1111-12.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>2/09/2022</u>