J-S15039-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JEREMIAH OSHEA IRVING | : | No. 1629 WDA 2019 |

Appeal from the Order Entered October 9, 2019
In the Court of Common Pleas of Beaver County Criminal Division at
No(s):  CP-04-CR-0000896-2019

BEFORE:   BENDER, P.J.E., OLSON, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                **FILED APRIL 3, 2020**

The Commonwealth of Pennsylvania appeals from the Order entered in the Court of Common Pleas of Beaver County on October 9, 2019, granting Appellee Jeremiah Oshea Irving's motion for habeas corpus relief for lack of *prima facie* evidence with regard to charges of:  receiving stolen property; possession of firearm prohibited; conspiracy to commit receiving stolen property; possession with intent to deliver a controlled substance; conspiracy to commit possession with intent to deliver a controlled substance; possession, and possession of drug paraphernalia.[1] These charges stemmed

---

[*] Former Justice specially assigned to the Superior Court.
[1] The Commonwealth does not challenge herein the trial court's decision as to the receiving stolen property, possession of firearm prohibited and conspiracy to commit receiving stolen property charges.

from the execution of a search warrant on February 1, 2019. Following a careful review, we reverse and remand for further proceedings.[2]

Our review of the certified record reveals that following an investigation of three individuals: Donald Williams, Robert Cook, and Appellee, Trooper Joshua Fachet obtained and executed a search warrant for the area of 4600 4th Avenue, Apartments 3 and 4, in Beaver Falls, Pennsylvania. At the Preliminary Hearing held on April 30, 2019, Trooper Fachet testified that upon entering Apartment 4 after executing that warrant on February 1, 2019, the Pennsylvania State Police Special Emergency Response Team (SERT) located several individuals therein. N.T. Preliminary Hearing, 4/30/19, at 8. When he ultimately arrived, Trooper Fachet observed four men, including Appellee, in the dining room and Williams, who was lying in the doorway between the dining room and kitchen; SERT already had taken Cook from the scene. *Id*. at 9, 12.

A Vice Unit police officer on the scene notified Trooper Fachet that two, clear, knotted baggies, one of which contained suspected crack cocaine and the other of which contained two baggies of a white, powdery substance that was believed to be cocaine, were found in the toilet. *Id.* at 10. Trooper Fachet

---

[2] The Commonwealth has perfected its interlocutory appeal from the Order granting Appellee's suppression motion in that its notice of appeal contains the requisite statement certifying that the Order would "substantially handicap the prosecution" pursuant to Pa.R.A.P. 311(d) and 904(e).

estimated a total amount of two to three ounces of cocaine was contained in the baggies. *Id*.

On the kitchen countertop, Trooper Fachet observed a Pyrex cup and baking soda along with a stainless steel knife stained with white residue. In Trooper Fachet's experience, such items are used to make crack cocaine. *Id*. at 11. A scale with a small piece of a white chunky substance on it was found near Cook and Appellee in the dining room. *Id*. Trooper Fachet found a stolen handgun in the living room and recovered $1,700 from Appellee's person and $1,800 from Williams. *Id*. at 12.

In the only bedroom of the home, Trooper Fachet observed a small, knotted baggie containing suspected crack cocaine and a crack pipe in the top, right dresser drawer. *Id*. at 13. Also therein were items bearing Cook's name and the address of the apartment. *Id*.

Prior to the execution of the search warrant, police had conducted surveillance on the residence. *Id*. at 23, 27. Trooper Fachet explained that he "kn[e]w for sure that [Appellee] was observed coming and going throughout the surveillance." *Id*. In fact, police took photographs of Appellee in front of the apartment building days before February 12, 2019. N.T., 10/1/19, at 10.

Trooper Fachet filed a criminal complaint on February 1, 2019, charging Appellee with the following seven counts: Receiving Stolen Property; Conspiracy to Commit Receiving Stolen Property; Possession of a Firearm; Possession with Intent to Deliver; Conspiracy to Commit Possession with

Intent to Deliver; Possession and Possession of Drug Paraphernalia. On June 10, 2019, the Commonwealth filed a criminal information charging Appellee with the same seven counts. On July 19, 2019, Appellee filed a counselled Omnibus Pre-Trial Motion for Relief wherein he requested a grant of habeas corpus due to a lack of sufficient evidence.

On October 1, 2019, the trial court held a Pre-Trial hearing at which time Trooper Fachet provided additional testimony. Specifically, he explained that surveillance at 4600, 4th Avenue, Apartment 4 identified Appellee repeatedly entering and exiting the residence, and photographs of him doing so were taken throughout January 22-23, 2019. N.T. 10/1/19, at 9-10. Also, the search of the apartment revealed a court document and a shipping label bearing Cook's name and the Apartment 4 address, and while detained, Cook admitted he resided in the apartment. *Id*. at 12-13. Trooper Fachet also commented upon the approximately $1,700 and $1,800 found on Appellee and Williams respectively. In doing so, he noted that based upon his training and experience "individuals will allow dealers or drug traffickers to utilize their apartment for many reasons, for payment or also through controlled substances, various reasons, so it's not unusual that the owner of the residence is not holding a lot of money." *Id*. at 38.

In its October 9, 2019, Order the trial court granted, in part, Appellee's suppression motion. The Commonwealth filed a timely notice of appeal on November 1, 2019. Although the trial court did not direct the Commonwealth

to file a concise statement of the matters complained of on appeal pursuant to Pa.R.A.P. 1925(b), the trial court filed a Rule 1925(a) Opinion on November 21, 2019. Therein, it indicated that it had determined it set forth the reasons for the appealed Order in its Opinion and Order dated and entered on October 9, 2019; therefore, no further Opinion would be forthcoming.

In its appellate brief, the Commonwealth presents the following question for our review:

1. Whether the trial court erred in ruling that the evidence was insufficient for a prima facie case as to possession with intent to deliver, conspiracy to commit[] possession with intent to deliver, possession and possession of drug paraphernalia.

Brief of Appellant at 7 (unnecessary capitalization omitted).

The Commonwealth argues that the trial court erred in determining it had failed to present *prima facie* evidence Appellee constructively possessed any of the contraband found in Apartment 4. The Commonwealth stresses Appellee may be deemed to have the requisite control over the contraband even though other individuals were present in the apartment, especially in light of the fact that he was found in close proximity to the manufacturing materials. ***Id***. at 20. The Commonwealth further contends the totality of the evidence, including the large quantity of drugs found in the nearby toilet and fact that Appellee had approximately $1,700 on his person, reveals that he knew about and participated in the manufacturing of narcotics in the apartment. ***Id***. at 20, 22.

At the outset, we recognize:

- 5 -

In reviewing a trial court's order granting a defendant's petition for writ of *habeas corpus*, we must generally consider whether the record supports the trial court's findings, and whether the inferences and legal conclusions drawn from those findings are free from error. A trial court may grant a defendant's petition for writ [of] *habeas corpus* after a preliminary hearing where the Commonwealth has failed to present a *prima facie* case against the defendant.

**Commonwealth v. Hilliard**, 172 A.3d 5, 10 (Pa.Super. 2017) (quotation marks and citations omitted). Further:

The evidentiary sufficiency of the Commonwealth's case, or lack thereof, is a question of law; as such, our scope of review is plenary. **Commonwealth v. Karetny**, [ ] 880 A.2d 505, 528 ( [Pa.] 2005). We have previously described the well-settled principles governing preliminary hearings, as well as the Commonwealth's concomitant burden, as follows:

The purpose of a preliminary hearing is to determine whether the Commonwealth has made out a *prima facie* case for the offenses charged. A *prima facie* case consists of evidence, read in the light most favorable to the Commonwealth, that sufficiently establishes both the commission of a crime and that the accused is probably the perpetrator of that crime.

The Commonwealth establishes a *prima facie* case when it produces evidence that, if accepted as true, would warrant the trial judge to allow the case to go to a jury. The Commonwealth need not prove the elements of the crime beyond a reasonable doubt; rather, the *prima facie* standard requires evidence of the existence of each and every element of the crime charged. Moreover, the weight and credibility of the evidence are not factors at this stage, and the Commonwealth need only demonstrate sufficient probable cause to believe that the person charged has committed the offense.

**Commonwealth v. Ouch**, 199 A.3d 918, 923 (Pa. Super. 2018) [ ].

*Commonwealth v. Perez,* 220 A.3d 1069, 1075 (Pa.Super. 2019) *(en banc)* (emphasis and footnote omitted), *appeal granted on other grounds*, March 2, 2020.

Furthermore, "[t]o demonstrate that a *prima facie* case exists, the Commonwealth must produce evidence of every material element of the charged offense(s) as well as the defendant's complicity therein." *Commonwealth v. Dantzler*, 135 A.3d 1109, 1112 (Pa.Super. 2016) (citation omitted). The Commonwealth may sustain its burden of proving every element of the crime(s) by means of wholly circumstantial evidence. *Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa.Super. 2011). However, "we have also noted that suspicion and conjecture are not evidence and are unacceptable as such." *Commonwealth v. Holston*, 211 A.3d 1264, 1269 (Pa.Super. 2019) (*en banc*) (citation omitted). "Where the Commonwealth's case relies solely upon a **tenuous inference** to establish a material element of the charge, it has failed to meet its burden of showing that the crime charged was committed." *Id.* (citation omitted, emphasis in original). "To meet its burden, the Commonwealth may utilize the evidence presented at the preliminary hearing and also may submit additional proof." *Dantzler*, 135 A.3d at 1112 (citation omitted).

To establish possession and possession of drug paraphernalia the Crimes Code requires, respectively:

> Knowing or intentionally possessing a controlled … substance by a person not registered under this Act, or a

- 7 -

practitioner not registered or licensed by the appropriate State board, unless the substance was obtained directly from, or pursuant to, a valid prescription order or order of a practitioner, or except as otherwise authorized by this Act.

35 P.S.§ 780-113(a)(16).

The use of, or possession with intent to use, drug paraphernalia for the purpose of planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packing, repacking, storing, containing, concealing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance in violation of this Act.

35 P.S. § 780-113(a)(32).

In addition, Possession with Intent to Deliver (PWID) is defined as

follows:

Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licenses by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 P.S. § 780-113(a)(30). This Court has explained the evidence necessary

to sustain a PWID conviction under 35 P.S. § 780-113(a)(30) as follows:

The Commonwealth establishes the offense of [PWID] when it proves beyond a reasonable doubt that the defendant possessed a controlled substance with the intent to deliver it.
To determine whether the Commonwealth presented sufficient evidence to sustain [a defendant's] conviction for [PWID], all of the facts and circumstances surrounding the possession are relevant and the elements of the crime may be established by circumstantial evidence. Furthermore, possession with intent to deliver can be inferred from the quantity of the drugs possessed along with the other surrounding circumstances.

***Commonwealth v. Little***, 879 A.2d 293, 297 (Pa.Super. 2005) (internal

citations omitted).  Moreover,

> [w]ith regard to the intent to deliver, we must examine the facts and circumstances surrounding the possession. The intent to deliver may be inferred from possession of a large quantity of controlled substances. It follows that possession of a small amount of a controlled substance supports the conclusion that there is an absence of intent to deliver. If the quantity of the controlled substance is not dispositive as to the intent, the court may look to other factors.
> Other factors to consider when determining whether a defendant intended to deliver a controlled substance include the manner in which the controlled substance was packaged, the behavior of the defendant, the presence of drug paraphernalia, and the sums of cash found in possession of the defendant. The final factor to be considered is expert testimony. Expert opinion testimony is admissible concerning whether the facts surrounding the possession of controlled substances are consistent with an intent to deliver rather than with an intent to possess it for personal use.

***Commonwealth v. Roberts***, 133 A.3d 759, 768 (Pa.Super. 2016) (internal

citation omitted), *appeal denied*, 636 Pa. 675, 145 A.3d 725 (Pa. 2016).

Possession may be proved "by showing actual possession, constructive

possession, or joint constructive possession." ***Commonwealth v. Hall***, 199

A.3d 954, 960 (Pa.Super. 2018), *appeal denied*, 206 A.3d 1028 (Pa. 2019).

> Constructive possession is the ability to exercise a conscious dominion over the contraband. It usually comes into play when police find contraband somewhere other than on the defendant's person. Constructive possession requires proof that the defendant had knowledge of the existence and location of the item. The Commonwealth may prove such knowledge circumstantially. That is, it may prove that the defendant had knowledge of the existence and location of the items at issue from examination of the totality of the circumstances surrounding the case, such as whether the contraband was located in an area usually accessible only to the defendant.

For the Commonwealth to prove constructive possession where more than one person has access to the contraband, the Commonwealth must introduce evidence demonstrating either the defendant's participation in the drug-related activity or evidence connecting the defendant to the specific room or areas where the drugs were kept.

*Id*. at 961 (cleaned up).

Finally:

A person is guilty of conspiracy with another person to commit a crime if with the intent of promoting or facilitating its commission he (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S.A. § 903(a).

In its brief Opinion filed on October 9, 2019, the trial court provides scant reasoning in support of its decision pertaining to the charges the Commonwealth challenges herein. Instead, the court focuses primarily upon the firearms charges. It does find that evidence Appellee actually made or even was aware of an agreement to deliver controlled substances was lacking because "[m]ere presence at the scene of a crime or knowledge of it is insufficient absent [Appellee] knowingly entering an agreement to participate." Trial Court Opinion, filed 10/9/19, at 3. In granting Appellee's petition for habeas corpus as to intentional possession of a controlled substance, the court states that the search warrant was for an apartment of which Appellee is not a lessee and "[n]othing was found on [Appellee]." *Id*. at 5.

- 10 -

Contrary to the trial court's holding, the Commonwealth is permitted to establish Appellee's constructive possession *via* circumstantial evidence and the reasonable inferences that arise therefrom. ***Commonwealth v. Parrish***, 191 A.3d 31, 36 (Pa.Super. 2018), *appeal denied*, 202 A.3d 42 (Pa. 2019). Viewing the evidence presented at both hearings in a light most favorable to the Commonwealth, we disagree with the trial court and find that, at a minimum, the Commonwealth presented a *prima facie* case to establish constructive possession as to possession with intent to deliver, possession, and possession of drug paraphernalia.

In the days prior to and on the day of the execution of the search warrant at 4600, 4th Avenue, Apartment 4, Appellee was identified and photographed entering and exiting the apartment building. This behavior indicates a familiarity with Apartment and suggests that Appellee's presence there on February 1, 2019, was not just happenstance.

During the execution of the warrant, Appellee was in the dining room with Cook and Williams, and a scale topped with suspected cocaine was found on the dining room table. In a nearby toilet, a bag containing two to three ounces of cocaine was recovered. A search of the kitchen revealed a Pyrex cup, a stainless steel knife stained with white residue and baking soda; Trooper Fachet indicated such items were used to make crack cocaine. Significantly, a search of Appellee recovered $1,700.00, while Williams was found to possess over $1,800.00.

In light of this, it cannot be said definitively that Appellee was merely present in the apartment with others and, therefore, lacked the requisite control of these items. To the contrary, it may be inferred form Appellee's close proximity to the contraband and previously-observed behavior in and around the apartment building that he constructively and jointly possessed the same. This, coupled with the fact that he possessed a large sum of money, is *prima facie* evidence he was aware of and a participant in the manufacturing of narcotics in the apartment. ***See Parrish, supra***.

The same holds true with regard to the possession with intent to deliver charge. As stated previously, a court may consider such factors as the way in which drugs are packaged, a defendant's behavior, the presence of drug paraphernalia, the sum of cash found in his possession, and expert testimony when determining whether he had an intent to deliver drugs, rather than possess them for personal use. ***See Roberts, supra***. Trooper Fachet commented upon the significant quantity of cocaine found in the toilet bowl, the way in which it was packaged, and the paraphernalia located in the kitchen as evincing an intent to sell the drugs. Each of these items was in close proximity to Appellee in the apartment. Also, the large sum of cash found on Appellee's person and his activity around the apartment led Trooper Fachet to comment that: "individuals will allow dealers or drug traffickers to utilize their apartment for many reasons, for payment or also through controlled substances, various reasons . . . ." N.T., 10/1/19, at 38. In light of all the

foregoing, we find the trial court erred in dismissing the possession, possession of drug paraphernalia, and PWID charges.

Finally, we further disagree with the trial court's finding that the record lacks *prima facie* evidence of a shared criminal intent among Appellee and his codefendants to establish conspiracy to commit PWID. A criminal conspiracy is proven upon the establishment of an agreement, shared criminal intent, and an overt act in furtherance of the agreement. ***See Commonwealth v. Johnson***, 180 A.3d 474, 479 (Pa.Super. 2018) (citing, *inter alia*, 18 Pa.C.S. § 903). As this Court has explained,

> [a]n explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities. Thus, a conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation. The conduct of the parties and the circumstances surrounding their conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt. Even if the conspirator did not act as a principal in committing the underlying crime, he is still criminally liable for the actions of his co-conspirators taken in furtherance of the conspiracy.

***Id***. (cleaned up).

From the previously discussed web of evidence, viewed in the light most favorable to the Commonwealth, we find the Commonwealth established a *prima facie* case that the interactions among Appellee, Cook and Williams evince a shared criminal intent to package and sell cocaine over which the three men exercised conscious dominion and control.

Prior to the execution of the search warrant, police observed Appellee entering and exiting numerous areas of the apartment building as well as Cook's residence. When officers entered Apartment 4, Appellee, Cook and Williams were found in the same room and in close proximity to the drugs and other contraband. Appellee and Williams each had a large sum of cash on his person, and Trooper Fachet explained that in his training and experience he had learned that an individual often allows a drug dealer to utilize his or her apartment to further the illegal enterprise. This circumstantial evidence establishes, at a minimum, that the Commonwealth put forth a *prima facie* case of conspiracy to commit possession with intent to deliver. **See Commonwealth v. Jones**, 874 A.2d 108, 122 (Pa.Super. 2005) (ruling circumstantial evidence of relationship with other occupant of a vehicle and joint access to contraband was sufficient to sustain conspiracy conviction).

Accordingly, we reverse the Order granting Appellee habeas corpus relief and remand for trial.

Order Reversed. Case Remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/3/2020

- 14 -