2016 PA Super 59

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| THOMAS DANTZLER, | |
| Appellee | No. 681 EDA 2014 |

Appeal from the Order January 28, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0008351-2012

BEFORE: GANTMAN, P.J., BENDER, P.J.E., BOWES, PANELLA, SHOGAN, LAZARUS, OTT, STABILE, and JENKINS, JJ.

OPINION BY BOWES, J.: **FILED MARCH 09, 2016**

The Commonwealth appeals from the January 28, 2014 order entered by the trial court that granted Thomas Dantzler's pre-trial motion to quash the charges leveled herein based on a lack of *prima facie* evidence.[1] We reverse and remand.

Reginald Smith, the victim in this matter, resided with Tiffany,[2] his girlfriend and the mother of his child, on the 3500 block of Camac Street, Philadelphia. On March 27, 2012, Mr. Smith arrived at his home and

---

[1] We have jurisdiction over this appeal pursuant to Pa.R.A.P. 311(d). ***Commonwealth v. Karetny***, 880 A.2d 505 (Pa. 2005).

[2] The record does not reveal Tiffany's surname.

discovered Appellee engaging in sexual activity with Tiffany.[3]  As a result, Mr. Smith tried to remove both Tiffany and Appellee from the home. Appellee and Mr. Smith then began to fight, with Mr. Smith attempting to force Appellee out his front door.  Mr. Smith ultimately retrieved a stick during the struggle and began to beat Appellee.  Tiffany also used a taser on Appellee.

Mr. Smith's neighbor, Kim Amos, who had lived in her home for twenty-three years, arrived to see Mr. Smith, Tiffany, and Appellee fighting. Ms. Amos maintained that Appellee was trying to enter the home and Mr. Smith was trying to push him out and that this happened several times.  Ms. Amos saw Mr. Smith use the stick outside the home to beat Appellee and asked Mr. Smith and Tiffany to stop attacking Appellee and call the police. Ms. Amos then telephoned 911 herself.  Police charged Mr. Smith and Tiffany with assault.

Thereafter, on April 7, 2012, at around 3:00 p.m., Ms. Amos observed Appellee and co-defendant Gelain Heard approach her home.  She recognized Appellee from the fight but had never seen Mr. Heard.  After they stopped in front of her house, she shouted at them that, "You have the wrong house."  N.T., 7/16/12, at 17.  She repeated that several times. Nonetheless, Mr. Heard used a cell phone to take a picture of her house.

---

[3] Mr. Smith testified that Appellee paid his girlfriend for sex.

Disturbed, Ms. Amos then followed the two men in her car and saw them enter a black Dodge Durango. She drove next to the Durango and again informed the men that they had the wrong home. Appellee was seated in the driver's seat of the Durango. Mr. Heard then said twice, "On everything I love, just don't be in the house tonight." *Id*. at 21.

Later that evening, a video surveillance camera captured an individual in a black hoodie with a baseball cap standing next to Appellee's Durango, conversing with the driver, around the corner from Ms. Amos' and Mr. Smith's homes. Several minutes later, Ms. Amos saw Mr. Heard on her steps, wearing a black hoodie and baseball hat. Mr. Heard asked her twice, "Is this the F-in' house?" *Id*. at 24. Ms. Amos responded, "F-no, this is not the house," and slammed her door. *Id*. Within five minutes, she heard four or five gun shots ring out. Mr. Smith, who was alone in his house at the time, described bullets flying into his home. He was hit in the shoulder with a bullet and another bullet grazed his neck.

Subsequently, police charged Appellee with aggravated assault, conspiracy to commit aggravated assault, possession of an instrument of crime ("PIC"), simple assault, and recklessly endangering another person ("REAP"). He proceeded to a preliminary hearing and the court bound over the case for trial. Appellee then filed a motion to quash the information, the equivalent in Philadelphia practice of a pre-trial writ of *habeas corpus*. After reviewing the notes of testimony from the preliminary hearing, the trial

court conducted a hearing. It heard additional evidence and then granted the motion. The Commonwealth filed a motion for reconsideration, which the court denied on February 25, 2014. The Commonwealth timely appealed.

A divided panel of this Court affirmed, concluding that based on an abuse of discretion standard we were required to defer to the trial court and that the evidence only showed mere presence at the scene shortly before the crime occurred.[4] The Commonwealth sought *en banc* review, which this Court granted. The matter is now ready for our review. The Commonwealth's sole issue on appeal is "Did the lower court err in ruling that the evidence was insufficient for a *prima facie* case?" Commonwealth's brief at 4.

We review a decision to grant a pre-trial petition for a writ of *habeas corpus* by examining the evidence and reasonable inferences derived therefrom in a light most favorable to the Commonwealth. ***Commonwealth v. James***, 863 A.2d 1179, 1182 (Pa.Super. 2004) (*en banc*). In ***Commonwealth v. Karetny***, 880 A.2d 505 (Pa. 2005), our Supreme Court found that this Court erred in applying an abuse of discretion standard in

_____

[4] Our Supreme Court's decision in ***Commonwealth v. Karetny***, 880 A.2d 505, 513 (Pa. 2005), indicates that the majority memorandum utilized a since disavowed standard of review. ***See*** discussion *infra*.

considering a pre-trial *habeas* matter to determine whether the Commonwealth had provided *prima facie* evidence. The **Karetny** Court opined, "the Commonwealth's *prima facie* case for a charged crime is a question of law as to which an appellate court's review is plenary." **Id**. at 513; **see also Commonwealth v. Huggins**, 836 A.2d 862, 865 (Pa. 2003) ("The question of the evidentiary sufficiency of the Commonwealth's *prima facie* case is one of law[.]"). The High Court in **Karetny** continued, "[i]ndeed, the trial court is afforded no discretion in ascertaining whether, as a matter of law and in light of the facts presented to it, the Commonwealth has carried its pre-trial, *prima facie* burden to make out the elements of a charged crime." **Karetny**, **supra** at 513. Hence, we are not bound by the legal determinations of the trial court. To the extent prior cases from this Court have set forth that we evaluate the decision to grant a pre-trial *habeas corpus* motion under an abuse of discretion standard, our Supreme Court has rejected that view. **See id**.[5]

---

[5] The following are a sampling of Superior Court cases that have applied an abuse of discretion standard:

**Commonwealth v. Black**, 108 A.3d 70, 77 (Pa.Super. 2015);
**Commonwealth v. McCullough**, 86 A.3d 901, 905 (Pa. Super. 2014);
**Commonwealth v. McCullough**, 86 A.3d 896, 898 (Pa.Super. 2014);
**Commonwealth v. Winger**, 957 A.2d 325, 327 (Pa.Super. 2008);
**Commonwealth v. Carroll**, 936 A.2d 1148, 1152 (Pa.Super. 2007);
**Commonwealth v. Kelly**, 931 A.2d 694, 696 (Pa.Super. 2007);
**Commonwealth v. Hendricks**, 927 A.2d 289, 290 (Pa.Super. 2007);
*(Footnote Continued Next Page)*

A pre-trial *habeas corpus* motion is the proper means for testing whether the Commonwealth has sufficient evidence to establish a *prima facie* case. **Carroll**, **supra** at 1152. "To demonstrate that a *prima facie* case exists, the Commonwealth must produce evidence of every material element of the charged offense(s) as well as the defendant's complicity therein." **Id**. To "meet its burden, the Commonwealth may utilize the evidence presented at the preliminary hearing and also may submit additional proof." **Id**.

*(Footnote Continued)* ———————————

**Commonwealth v. Williams**, 911 A.2d 548, 550 (Pa.Super. 2006); **Commonwealth v. James**, 863 A.2d 1179, 1181-1182 (Pa.Super. 2004) (*en banc*); **Commonwealth v. Engle**, 847 A.2d 88, 91 (Pa.Super. 2004); **Commonwealth v. Ruby**, 838 A.2d 786, 788 (Pa.Super. 2003); **Commonwealth v. Keller**, 823 A.2d 1004, 1010-1011 (Pa. Super. 2003); **Commonwealth v. Carbo**, 822 A.2d 60, 63 (Pa.Super. 2003); **Commonwealth v. Fountain**, 811 A.2d 24, 25 (Pa. Super. 2002); **Commonwealth v. Kohlie**, 811 A.2d 1010 (Pa. Super. 2002); **Commonwealth v. Miller**, 810 A.2d 178, 180 (Pa.Super. 2002); **Commonwealth v. Giusto**, 810 A.2d 123, 125 (Pa.Super. 2002); **Commonwealth v. Packard**, 767 A.2d 1068, 1070 (Pa.Super. 2001); **Commonwealth v. Saunders**, 691 A.2d 946, 948 (Pa.Super. 1997); **Commonwealth v. Karlson**, 674 A.2d 249, 251 (Pa.Super. 1996); **Commonwealth v. Schwer**, 660 A.2d 621, 622 (Pa.Super. 1995); **Commonwealth v. Lundberg**, 619 A.2d 1066 (Pa.Super. 1993).

The **Lundberg** Court is one of the first pre-trial *habeas* cases to recite this standard, but it relied on two decisions that pertained to post-conviction *habeas corpus* petitions. **See Commonwealth v. Lundberg**, 619 A.2d 1066 (1993) (citing **Commonwealth ex rel. Kitchen v. Burke**, 107 A.2d 193, 195 (Pa.Super. 1954); **Commonwealth ex rel. Richter v. Burke**, 103 A.2d 293, 295 (Pa.Super. 1953)). The pre-trial *habeas* cases are not sound relative to the standard of review.

The Commonwealth maintains that the trial court erred as a matter of law in dismissing the charges against Appellee.[6]  According to the Commonwealth, the trial court made impermissible and implausible inferences from the evidence and entirely disregarded its evidence of motive.  It highlights that the credibility of witnesses is not determined at a preliminary hearing and that the question of whether the evidence was sufficient is one of law.  In its view, the trial court erred in finding that, absent direct evidence of an agreement between Appellee and his co-defendant, neither a conspiracy nor conspiratorial liability was established. The Commonwealth posits that direct evidence is not mandated nor is required to prove an express or explicit agreement via verbal communication.

It continues that the following evidence was sufficient to establish a *prima facie* case: Appellee traveled together with Mr. Heard to where Appellee had recently been involved in a fight with the victim, took a picture of the victim's neighbor's home, was present when his co-defendant made a threat, and his vehicle was observed around the corner from Mr. Smith's home with a person fitting the description of Mr. Heard shortly before Mr.

---

[6] Appellee expressly declined to file a brief in this matter and therefore has not advanced any argument in support of his position on appeal aside from adopting the trial court's decision.

Heard arrived on the door step of Mr. Smith's neighbor's home, and then shots were fired at Mr. Smith's house.

The Commonwealth adds that its evidence demonstrated that Mr. Heard had no affiliation with the victim. It suggests that, "[o]nly a conspiracy with [Appellee], who had ample motive, can explain why Heard decided to track down a complete stranger and fire multiple bullets into his home." Commonwealth's brief at 21. In addition, it points out that Ms. Amos inferred a conspiratorial purpose and potential criminal activity herself when she saw the pair in front of her house taking a picture of her home, and repeatedly instructed the men that they had the wrong house.

The trial court opined that the prosecution's evidence of a conspiracy was speculative and that it "did not present any direct evidence that Dantzler was involved in the shooting of Reginald Smith." Trial Court Opinion, 5/16/14, at 7. The court found that the circumstantial evidence merely established that Appellee and Mr. Heard were together three hours before the shooting and that Mr. Heard had made a threat in which Appellee did not acquiesce. We disagree and find that the trial court failed to consider the evidence in a light most favorable to the Commonwealth and disregarded the reasonable and obvious inferences from the evidence presented.

As noted, the Commonwealth charged Appellee with aggravated assault, conspiracy to commit aggravated assault, simple assault, PIC, and

REAP. The Commonwealth's theory for these crimes is based on vicarious liability, specifically conspiratorial liability.[7] A conspiratorial agreement "can be inferred from a variety of circumstances including, but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode." *Commonwealth v. Feliciano*, 67 A.3d 19, 25-26 (Pa.Super. 2013) (*en banc*) (discussing crime of conspiracy). This Court has explained in the context of a sufficiency claim following a finding of guilt that, "the Commonwealth must establish the defendant: 1) entered into an agreement to commit or aid in an unlawful act with another person or persons; 2) with a shared criminal intent; and 3) an overt act was done in furtherance of the conspiracy." *Feliciano*, *supra* at 25-26. The *Feliciano* Court added, "The conduct of the parties and the circumstances surrounding such conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt." *Id*. at 26. Necessarily, the conduct of the parties and circumstances surrounding that conduct may establish sufficient

_____

[7] A defendant can also be guilty of a crime if he is an accomplice of another person who commits that crime. Conspiracy and accomplice liability are not identical. *See Commonwealth v. Roebuck*, 32 A.3d 613, 622-623 (Pa. 2011). While a defendant does not become an accomplice merely by being present at the scene of a crime, he may be an accomplice if, with the intent of promotion or facilitating commission of the crime, he solicits, commands, encourages, or requests the other person to commit it or aids or agrees to aid or attempts to aid the other person in planning or committing it.

evidence to prove a *prima facie* case of conspiracy or conspiratorial liability. The crime of conspiracy, which is interrelated to conspiratorial liability for the underlying crimes, is statutorily defined as follows,

> A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
>
> (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or
>
> (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S. § 903.

In the context of this matter, the Commonwealth was required to establish a *prima facie* case that Appellee conspired to cause serious bodily injury under circumstances manifesting an extreme indifference to the value of human life. ***See*** 18 Pa.C.S. § 2702(a)(1). In addition, it needed to prove a *prima facie* case that Appellee conspired to both cause bodily injury and recklessly place another in danger of death or serious bodily injury. 18 Pa.C.S. § 2701(a)(1) (simple assault); 18 Pa.C.S. § 2705 (REAP). Finally, the Commonwealth had to provide sufficient *prima facie* evidence that Appellee conspired to possess an instrument of crime with intent to employ it criminally. 18 Pa.C.S. § 907(a); ***Commonwealth v. Jones***, 416 A.2d 539, 541 (Pa.Super. 1979) (defendant can be guilty of inchoate crime of PIC as a conspirator).

Viewing the evidence in a light most favorable to the Commonwealth, and mindful that a *prima facie* case is a low threshold of proof, we find that the trial court committed an error of law in quashing the charges.  Here, the evidence and its reasonable inferences are clear.  Appellee had a fight with the victim.  He and Mr. Heard were then seen in the immediate area of Mr. Smith's home within two weeks of the prior incident.   Ms. Amos testified that, in the twenty-three years she lived in the neighborhood, the first time she saw Appellee was the day of the fight.  The day of the shooting was the only time she saw Mr. Heard.

Appellee was present when Mr. Heard took a picture of Ms. Amos' home, located next door to the victim's house.  Appellee was present when Ms. Amos repeatedly told him and Mr. Heard that they were at the wrong house.  Mr. Heard expressly told Ms. Amos not to be in her home while he was seated directly next to Appellee.  Appellee's vehicle was captured on video tape with a person matching Mr. Heard's description talking to the occupant  of that vehicle in the vicinity of Mr. Smith's home shortly before the shooting.  Mr. Heard, wearing the same clothes as the person who had been seen talking to a person inside Appellee's car, appeared on the front steps of Ms. Amos' house.  After Ms. Amos again told Mr. Heard he was at the wrong home, shots rang out next door and Mr. Smith suffered gunshot wounds.  This evidence, and the reasonable inferences derived therefrom,

establishes a *prima facie* case that Appellee conspired with Mr. Heard to retaliate for the prior fight.

Order reversed. Case remanded. Jurisdiction relinquished.

President Judge Emeritus Bender, Judge Panella, Judge Shogan, Judge Ott, Judge Stabile, and Judge Jenkins Join this Opinion.

Judge Lazarus files a Concurring Opinion in which Judge Ott and Judge Jenkins join.

President Judge Gantman Concurs in the Result of this Opinion.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/9/2016