**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| DEREK LEE ROYSTER | : | |
| | : | |
| Appellant | : | No. 642 WDA 2020 |

Appeal from the Judgment of Sentence Entered March 5, 2020
In the Court of Common Pleas of Fayette County
Criminal Division at No(s): CP-26-CR-0000931-2018

BEFORE: SHOGAN, J., DUBOW, J., and KING, J.

MEMORANDUM BY KING, J.:            **FILED: JUNE 7, 2021**

Appellant, Derek Lee Royster, appeals from the judgment of sentence entered in the Fayette County Court of Common Pleas, following his jury trial convictions for two counts each of aggravated assault and recklessly endangering another person ("REAP"), and one count each of voluntary manslaughter, attempted homicide, and carrying a firearm without a license.[1] We affirm.

The relevant facts and procedural history of this case are as follows:

> On…November [27,] 2017, Miranda Engle was contacted by…Appellant and asked if she knew of anyone who wanted to purchase drugs, specifically cocaine. After the call, Engle and Megan Bowlen along with Marquell Bailey, Joel Grooms, and Devin Fitzgerald set up a plan to steal the cocaine from…Appellant. Engle arranged a meeting to purchase an

---

[1] 18 Pa.C.S.A. §§ 2702(a)(4), 2705, 2503(a)(1), 901(a), and 6106(a)(1), respectively.

eight ball of cocaine from…Appellant at an empty apartment located at 61 Pershing Court, Uniontown, Fayette County, Pennsylvania. That night the two women were waiting in the living room of the apartment when…Appellant arrived. Marquell Bailey and Devin Fitzgerald were hiding in another room of the apartment. The only light in the apartment came from the second floor. …Appellant placed some cocaine on a coffee table for the women to sample. Bowlen then pretended she couldn't find her money[;] the women and [Appellant] went upstairs to locate her money. When no money was found upstairs, the three returned to the living room. While…Appellant stood by the door, Engle sprayed mace in his direction. Bailey entered the room and punched…Appellant once in the face. …Appellant then pulled his gun and repeatedly fired it at Bowlen, Bailey, and Engle. Engle and Fitzgerald fled the apartment. Bailey, despite being shot twice in the chest, managed to exit the rear door of the apartment before collapsing. …Appellant fled the apartment through the front door.

Bowlen went across the street and called an ambulance for Bailey. She also informed Engle that Bailey had been shot. Both women returned to the apartment and Engle began performing CPR until the ambulance arrived. After the ambulance arrived, the two women left the scene. Bailey died from the gunshot wounds. When contacted by the police later that evening, the women went to the police station and informed them that…Appellant had shot Bailey. …Appellant was subsequently arrested in Wilkinsburg.

(Trial Court Opinion, filed August 17, 2020, at 2-3 unpaginated) (internal citations omitted).

The Commonwealth charged Appellant on May 16, 2018, with four counts of aggravated assault, three counts of REAP, and one count each of criminal homicide, attempt to commit criminal homicide, and possession with intent to deliver. The Commonwealth also filed an amended criminal information on August 29, 2018, adding one charge of carrying a firearm

without a license. On September 25, 2018, Appellant filed an omnibus pretrial motion, which included a petition for *habeas corpus* relief alleging that "[t]he Commonwealth cannot sustain its burden to establish a *prima facie* case as to the charge[s] lodged against [Appellant]." (Omnibus Pretrial Motion at 1 unpaginated). Specifically, in his brief in support of granting *habeas corpus* relief, Appellant attacked the Commonwealth's charges of criminal homicide, aggravated assault, and possession with intent to deliver. Following several hearings, the court ultimately denied Appellant's motion on October 18, 2019. Significantly, at the November 21, 2018 hearing, the following exchange occurred:

> [Defense Counsel]: [Appellant]'s position, Your Honor, is that the Commonwealth proposes that there was a robbery and that my client was attacked and was in the process of being beaten and maced.
>
> The Court: So you're raising self-defense.
>
> [Appellant]: No. Fuck, no. Stop playing with me. You trying to sell me out, bro. No. No, we're not raising no self defense.
>
> [Defense Counsel]: I'm not raising self defense.

(N.T. Hearing, 11/21/18, at 19).

A jury trial commenced on March 2, 2020. On March 4, 2020, the jury found Appellant guilty of two counts each of aggravated assault and REAP, and one count each of voluntary manslaughter, attempted homicide, and carrying a firearm without a license. The court sentenced Appellant the following day to an aggregate term of 10 to 20 years' imprisonment, and

granted Appellant three days of credit for time served, explaining:

> [Appellant's] credit time is from November 30, 2017, to December 3, 2017, the reason being is that although [Appellant] has been incarcerated since November 30, 2017, he was revoked and resentenced by me at No. [1932] and 1946 both of 2016, six to twelve months and six to twelve months consecutively. He has used up and maxed out on each of those. I am not sure of the date, guessing it was November 30, 2017—he maxed out on the revocation on December 4, 2019, which obviously…consumed or used up a lot of that time. The other thing that is affecting the credit time, [J]udge Leskinen placed a detainer on him at case No. 267 of 2014 and Judge Leskinen entered an Order on May 21 of 2018, indicating that he would not resolve the detainer until he was sentenced on the homicide charge. The date of Judge Leskinen's Order, May 21 of 2018, so he still needs [defense counsel] to resolve that detainer and you may want to bring that to his attention to get it scheduled. All of that said between the two sentences and the detainer, there is only three days credit and, yes, [the probation officer] did, as she said to me triple check it, so she has very intentionally gone over the credit time.

(N.T. Sentencing, 3/5/20, at 6).

Appellant timely filed a post-sentence motion on Monday, March 16, 2020, which the court denied on May 22, 2020. On Monday, June 22, 2020, Appellant timely filed a notice of appeal, and the court ordered Appellant to file a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(b). Appellant complied on July 13, 2020.

Appellant raises the following issues on appeal:

> Whether the *habeas corpus* [petition] should have [been] granted and the case dismissed when [Appellant] used lawful and justifiable force in self-defense and cannot be criminally liable for the unintentional death of an individual and attempts to cause bodily injury to others under Pennsylvania law?

- 4 -

Whether the evidence was sufficient to support the guilty verdicts of the jury?

Whether the trial court erred in permitting the police officer's testimony about a statement made by [Appellant] to his attorney during a pretrial proceeding in regard to a possible defense at trial?

Whether the trial court erred in the calculation and determination of [Appellant's] credit for time served when it imposed sentence on March 5, 2020?

(Appellant's Brief at 4).

In his first issue, Appellant argues the trial court erred in denying his *habeas corpus* petition where the Commonwealth failed to present a *prima facie* case of the charges against him. Specifically, Appellant attacks the court's determination that the Commonwealth presented sufficient evidence to support its allegations of criminal homicide and aggravated assault. Rather, Appellant maintains he cannot be found guilty of these offenses where he acted in self-defense after Mr. Bailey and his co-conspirators attacked Appellant in a vacant apartment and Appellant assumed they intended to kill or injure him. Appellant submits there was ample evidence presented at the pre-trial hearings to show that he acted instinctively out of fear following the attack and justifiably employed self-defense, including, *inter alia*: (1) Ms. Bowlen's testimony that Appellant was maced and punched in the face while Mr. Bailey and his co-conspirators attempted to rob Appellant, and Appellant pulled out his gun and fired several shots in response; and (2) Detective Doug Yohouse's testimony that, upon picking Appellant up, Appellant spontaneously

claimed "it was self-defense." (*Id.* at 12). Appellant further maintains there was no evidence showing he was the initial aggressor or that he acted intentionally/knowingly. Appellant concludes "[t]he *habeas corpus* should have been granted and the charges…dismissed." (*Id.* at 16). We disagree.

Our standard of review of a trial court's grant or denial of a pre-trial *habeas corpus* motion is *de novo* and our scope of review is plenary. ***Commonwealth v. Price***, 189 A.3d 423, 427 (Pa.Super. 2018), *appeal denied*, 650 Pa. 653, 201 A.3d 157 (2019) (citing ***Commonwealth v. Dantzler***, 135 A.3d 1109, 1112 (Pa.Super. 2016) (*en banc*)). As this Court explained in ***Dantzler***:

> A pre-trial *habeas corpus* motion is the proper means for testing whether the Commonwealth has sufficient evidence to establish a *prima facie* case. To demonstrate that a *prima facie* case exists, the Commonwealth must produce evidence of every material element of the charged offense(s) as well as the defendant's complicity therein. To meet its burden, the Commonwealth may utilize the evidence presented at the preliminary hearing and also may submit additional proof.

*Id.* (internal quotation marks and citations omitted).

Furthermore,

> In reviewing a trial court's order granting [or denying] a defendant's petition for writ of *habeas corpus*, we "must generally consider whether the record supports the trial court's findings, and whether the inferences and legal conclusions drawn from those findings are free from error." … Notably, the Commonwealth does not have to prove the defendant's guilt beyond a reasonable doubt. Further, the evidence must be considered in the light most favorable to the Commonwealth so that inferences that would support a guilty verdict are given effect.

- 6 -

*Price, supra* (citing *Commonwealth v. Santos*, 583 Pa. 96, 876 A.2d 360, 363 (2005)).

The Crimes Code defines the criminal homicide and aggravated assault, in relevant part, as follows:

**§ 2501.  Criminal Homicide**

**(a)   Offense defined.**—A person is guilty of criminal homicide if he intentionally, knowingly, recklessly or negligently causes the death of another human being.

18 Pa.C.S.A. § 2501(a).

**§ 2702.  Aggravated assault**

**(a)   Offense   defined.**—A   person   is   guilty   of aggravated assault if he:

\* \* \*

(4)   attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon[.]

18 Pa.C.S.A. § 2702(a)(4).

Instantly, in denying Appellant's request for *habeas corpus* relief, the trial court reasoned:

As to the charges of Criminal Homicide, the Commonwealth need only prove that [Appellant] intentionally, knowingly, recklessly, or negligently caused the death of another person.  The use of a deadly weapon on a vital part of the body i[s] sufficient to establish a specific intent to kill. [Appellant]'s use of a firearm to shoot Bailey in the chest is supported by medical evidence [as having caused] Bailey's death.  Therefore, the Commonwealth has established a *prima facie* case as to [Criminal Homicide].

> As to the charges of Aggravated Assault, the Commonwealth presented evidence that [Appellant] attempted to cause or intentionally or knowingly did cause bodily injury with a deadly weapon. The use of the weapon against [Bailey,] and [Appellant] pointing the gun at the other persons in the apartment and firing the weapon several times is sufficient to establish that he attempted to harm them and establishes a *prima facie* case against [Appellant] on these charges.

(Trial Court Opinion, filed October 18, 2019, at 3).[2] We agree with the trial court's analysis.

Here, the Commonwealth did not need to prove Appellant's guilt beyond a reasonable doubt at the pre-trial stage. **See Price, supra**. Rather, the Commonwealth only had to present a *prima facie* case to justify taking the charges to trial. **See id.** The Commonwealth presented, *inter alia*, the following evidence at the preliminary hearing: (1) Ms. Bowlen's testimony that Appellant shot Mr. Bailey in the chest; (2) Ms. Bowlen's testimony that Appellant shot at her but missed as she jumped behind a couch; (3) Ms. Bowlen's testimony that Appellant fired "between two and seven" gun shots into the apartment; and (4) Mr. Bailey's death certificate indicating that his cause of death was homicide. (N.T. Preliminary Hearing, 4/17/18, at 4-10). Viewed in the light most favorable to the Commonwealth, the Commonwealth

_____

[2] In its denial of Appellant's request for *habeas corpus* relief, the court also addressed the charges of possession with intent to deliver and firearms not to be carried without a license. Appellant has not challenged the court's findings concerning these charges in his brief on appeal. Therefore, we need not address them here. **See** Pa.R.A.P. 2119; **Commonwealth v. Hakala**, 900 A.2d 404 (Pa.Super. 2006), *appeal denied*, 589 Pa. 737, 909 A.2d 1288 (2006) (stating failure to develop argument on appeal results in waiver).

presented a *prima facie* case to support the charges of criminal homicide and aggravated assault.[3] ***See*** 18 Pa.C.S.A. §§ 2501(a); 2702(a)(4); ***Price, supra***. Therefore, the court properly denied Appellant's request for *habeas corpus* relief.

In his second issue, Appellant argues the Commonwealth presented insufficient evidence at trial to support the guilty verdicts. Concerning his conviction for voluntary manslaughter, Appellant asserts he acted in self-defense after being blinded by mace and punched in the face. Appellant emphasizes that he was not the initial aggressor. Rather, Appellant contends he responded with force because he believed he was in imminent danger of death or serious harm. Appellant further avers that he had no duty to retreat and, even if he did, the circumstances prevented him from doing so where the attack took place in a matter of seconds, the area in which the attack occurred was cramped and dark, and the door through which he could exit was closed. Additionally, Appellant avers the Commonwealth did not present any expert testimony or any other evidence as to "the dynamics of being punched in the face after being sprayed with mace." (Appellant's Brief at 18). Specifically, Appellant contends the Commonwealth failed to present any evidence

_____

[3] Although Appellant relies on **Commonwealth v. Fowlin**, 551 Pa. 414, 710 A.2d 1130 (1998), **Fowlin** differs from the instant case in that three of the men who attacked Fowlin were armed with handguns and one of the men drew his gun during the confrontation. In the instant case, there was no evidence that Mr. Bailey or any of his co-conspirators were armed with anything other than mace.

regarding the type and strength of the mace used, or what effects it could have had on Appellant under the circumstances.

Similarly, concerning his convictions for aggravated assault, Appellant submits the evidence was insufficient to show that he acted intentionally, knowingly, or recklessly. Rather, Appellant maintains the evidence supported his claim of justifiable self-defense, where he was attacked by Ms. Engle and Mr. Bailey.

Regarding his conviction for firearms not to be carried without a license, Appellant avers that to prove this offense the firearm must be "concealed on the person when the person did not possess a license." (*Id.* at 20). Appellant argues that while there is evidence that he possessed and used a firearm, there was no testimony from the arresting officer, Ms. Bowlen, or Ms. Engle, or any other evidence that the firearm was "concealed." Rather, Appellant emphasizes that the testimony showed Appellant simply pulled the gun out of his waistband. Additionally, Appellant highlights that no gun was recovered from the scene. Appellant concludes the evidence was insufficient to sustain the guilty verdicts, and he is entitled to relief. We disagree.

Preliminarily, as a general rule, issues not raised in a Pa.R.A.P. 1925(b) statement will be deemed waived for appellate review. ***Commonwealth v. Castillo***, 585 Pa. 395, 888 A.2d 775 (2005). A Rule 1925(b) statement that is not specific enough for the trial court to identify and address the issues the defendant wishes to raise on appeal may also result in waiver.

*Commonwealth v. Reeves*, 907 A.2d 1 (Pa.Super. 2006), *appeal denied*, 591 Pa. 712, 919 A.2d 956 (2007).

> When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review. When an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues. In other words, a Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all.

*Id.* at 2.

Additionally, "when challenging the sufficiency of the evidence on appeal, [an appellant's Rule 1925(b)] statement must specify the element or elements upon which the evidence was insufficient in order to preserve the issue for appeal." *Commonwealth v. Gibbs*, 981 A.2d 274, 281 (Pa.Super. 2009), *appeal denied*, 607 Pa. 690, 3 A.3d 670 (2010). "Such specificity is of particular importance in cases where [an appellant] was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt." *Id.*

Instantly, Appellant failed to raise his sufficiency of the evidence claim with any specificity in his Rule 1925(b) statement. Appellant's statement merely provides: "The evidence was legally insufficient to support the guilty verdicts of the jury." (Appellant's Rule 1925(b) statement at 1). The Rule 1925(b) statement did not identify which convictions Appellant sought to challenge or which elements of those convictions the Commonwealth failed to

prove. Thus, Appellant's challenge to the sufficiency of the evidence is waived for purposes of our review. ***See Gibbs, supra***; ***Reeves, supra***.

In his third issue, Appellant argues the trial court erred in permitting Officer Jamie Holland to read at trial a statement that Appellant made during the November 21, 2018 pretrial hearing. Specifically, Appellant alleges the court erred in allowing Officer Holland to read the following:

> The Court: so, you're raising self defense
>
> [Appellant]: no, fuck no, stop playing with me, you're trying to sell me out bro, no. We're not raising self defense.
>
> [Appellant]: they have no physical evidence to say I've done anything illegal other than the statement of two junkies who have conflicting testimony.

(Appellant's Brief at 21) (citing N.T. Trial, 3/3/20, at 103). Appellant avers this statement contrasts sharply with the statement he made to Detective Yohouse, in which Appellant stated he was the "victim" and acted in "self-defense." (Appellant's Brief at 21). Appellant asserts that the Commonwealth's introduction of Officer Holland's testimony was for the purpose of "diffus[ing] the possibility" that the jury would receive a self-defense instruction. (***Id.*** at 22). Appellant also emphasizes that he made the pretrial hearing statement to his attorney out of anger, and it was simply overheard by others. Appellant maintains the prejudice of introducing his pretrial hearing statement outweighs any probative value. Appellant further alleges that defense counsel did not stipulate to the transcript of the November 21, 2018 hearing. Appellant concludes the court erred by admitting

- 12 -

the officer's testimony, and he is entitled to relief. We disagree.

"The admissibility of evidence is at the discretion of the trial court and only a showing of an abuse of that discretion, and resulting prejudice, constitutes reversible error." ***Commonwealth v. Ballard***, 622 Pa. 177, 197-98, 80 A.3d 380, 392 (2013), *cert. denied*, 573 U.S. 940, 134 S.Ct. 2842, 189 L.Ed.2d 824 (2014).

> The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

***Commonwealth v. Goldman***, 70 A.3d 874, 878-79 (Pa.Super. 2013), *appeal denied*, 624 Pa. 672, 85 A.3d 482 (2014). "To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." ***Commonwealth v. Lopez***, 57 A.3d 74, 81 (Pa.Super. 2012), *appeal denied*, 619 Pa. 678, 62 A.3d 379 (2013).

Instantly, Appellant repeatedly spoke in place of his defense counsel throughout the pretrial hearing on November 21, 2018. While the Commonwealth objected to Appellant's involvement in the hearing, as he was represented by counsel, the court permitted Appellant to ask and answer several questions. Nothing in the record differentiates the instant statement

concerning Appellant's denial of self-defense from any of the other interjections Appellant made throughout the hearing. Appellant cannot now take issue with the inclusion of this particular statement in the transcripts of the hearing, nor can he claim the statement was a private communication with his attorney where he openly answered the court's question. Furthermore, while his defense counsel objected to the introduction of the statement at trial, counsel stipulated to the authenticity of the hearing transcript. (**See** N.T. Trial, 3/3/20, at 96-103). Under these circumstances, we see no abuse of discretion in the court's allowing Officer Holland to read Appellant's statement from the preliminary hearing. *See Ballard, supra*.

In his fourth issue, Appellant argues the trial court erred in calculating his credit for time served. Appellant contends that he was incarcerated for the instant matter on November 30, 2017, sentenced on March 5, 2020, and never met the requirements for bail. Despite this lengthy period of incarceration, Appellant complains that he only received three days of credit (from November 30, 2017 to December 3, 2017) toward the instant case for time served. Appellant outlines the court's reasoning for why he received so little credit for time served as follows:

> The court explained that…Appellant was revoked and resentenced (by the same judge) on two (2) older cases, No. [1932] of 2016 and No. 1946 of 2016, to 6-12 months on each case, running consecutively. …
>
> Additionally, on yet another older case, No. 264 of 2014, Judge Leskinen placed a detainer on…Appellant and would not lift the detainer until he was sentenced on the homicide

charge. Judge Leskinen's order was dated May 21, 2018. The trial court ran the March 5, 2020 sentence concurrent with Judge Leskinen's case. …

(Appellant's Brief at 23-24).

Appellant, however, contends the court erred in applying the time he spent in prison for the instant matter to his revocation sentences and detainer where, *inter alia*, (1) "the new case did not cause the technical violations of the older cases;" (2) "[Appellant] was incarcerated on the new charge prior to the revocation hearings;" (3) Appellant never met the requirements to be released on bail; and (4) nothing in the record explained the effect the violation sentences or detainer would have on the credit for time served on the homicide case. (**Id.** at 26-27). Appellant concludes he should receive credit from November 30, 2017 until March 5, 2020 toward the instant case, as he contends that all time served should be credited to his new case and not to the detainer or revocation sentences. We disagree.

Appellant's claim implicates the legality of his sentence. **See Commonwealth v. Dixon**, 161 A.3d 949 (Pa.Super. 2017) (stating challenge to court's failure to give credit for time served implicates legality of sentence); **Commonwealth v. Edrington**, 780 A.2d 721 (Pa.Super. 2001) (maintaining legality of sentence claims cannot be waived, where reviewing court has proper jurisdiction). "If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction. An illegal sentence must be vacated." **Commonwealth v. Stevenson**, 850 A.2d 1268, 1271

(Pa.Super. 2004) (quoting **Commonwealth v. Kinney**, 777 A.2d 492, 494 (Pa.Super. 2001)). "In evaluating a trial court's application of a statute, our standard of review is plenary and is limited to determining whether the trial court committed an error of law." **Stevenson, supra** at 1271.

Credit for time served is governed by statute as follows:

**§ 9760. Credit for time served**

After reviewing the information submitted under section 9737 (relating to report of outstanding charges and sentences) the court shall give credit as follows:

(1) Credit against the maximum term and any minimum term shall be given to the defendant for all time spent in custody as a result of the criminal charge for which a prison sentence is imposed or as a result of the conduct on which such a charge is based. Credit shall include credit for time spent in custody prior to trial, during trial, pending sentence, and pending the resolution of an appeal.

(2) Credit against the maximum term and any minimum term shall be given to the defendant for all time spent in custody under a prior sentence if he is later reprosecuted and resentenced for the same offense or for another offense based on the same act or acts. This shall include credit in accordance with paragraph (1) of this section for all time spent in custody as a result of both the original charge and any subsequent charge for the same offense or for another offense based on the same act or acts.

(3) If the defendant is serving multiple sentences, and if one of the sentences is set aside as the result of direct or collateral attack, credit against the maximum and any minimum term of the remaining sentences shall be given for all time served in relation to the sentence set aside since the commission of the offenses on which the sentences were based.

(4) If the defendant is arrested on one charge and later prosecuted on another charge growing out of an act or acts

that occurred prior to his arrest, credit against the maximum term and any minimum term of any sentence resulting from such prosecution shall be given for all time spent in custody under the former charge that has not been credited against another sentence.

42 Pa.C.S.A. § 9760. "[A] defendant shall be given credit for any days spent in custody prior to the imposition of sentence, but only if such commitment is on the offense for which sentence is imposed. Credit is not given, however, for a commitment by reason of a separate and distinct offense." **Commonwealth v. Clark**, 885 A.2d 1030, 1034 (Pa.Super. 2005) (quoting **Commonwealth v. Miller**, 655 A.2d 1000, 1002 (Pa.Super. 1995)) (internal quotation marks omitted). Time spent in pretrial incarceration for an unrelated offense is not one of the enumerated areas under Section 9760. **Id.**

Instantly, in addressing this issue, the trial court reasoned:

> …Appellant asserts that [the] trial court erred in calculation and determination of the credit for time served when it imposed the sentence. The [c]ourt stands by its calculations. Although…Appellant was arrested on November 30, 2017, he only had credit for three days due to his being revoked and resentenced in his other cases and a detainer on a third case. …Appellant was arrested on November 30, 2017 and bail was denied. At the [time] of his arrest, the [c]ourt had issued bench warrants in Cases No. 1932 and 1946 of 2016 for…Appellant's failure to appear at a revocation hearing on November 11, 2017. On December 4, 2017, this [c]ourt resentenced…Appellant at each case to a term of incarceration of six (6) to twelve (12) months to run consecutively to each other. He maxed out on each sentence on December 3, 2019. At Case no. 267 of 2014, Judge Steve P. Leskinen scheduled a revocation hearing for May 22, 2018, when…Appellant failed to appear for that hearing, Judge Leskinen issued a detainer for…Appellant. On March 5, 2020, Judge Leskinen revoked his sentence and resentenced him to forty-five (45) to

- 17 -

> ninety (90) days incarceration with that sentence beginning on December 3, 2019. As…Appellant's time incarcerated was primarily used on these cases, the sentence imposed was correct.

(Trial Court Opinion, filed August 17, 2020, at 8-9 unpaginated). We agree with the trial court's analysis. Here, as the trial court explained, the vast majority of the time Appellant was incarcerated prior to his sentencing on March 5, 2020, was absorbed into his unrelated revocation sentences and detainer, leaving him with only three days of credit toward his sentence for the instant offenses. **See Clark, supra**. Thus, the court correctly calculated Appellant's credit for time served, and the sentence Appellant received was not illegal. **See** 42 Pa.C.S.A. § 9760; **Stevenson, supra**. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/7/2021

- 18 -