J-S25025-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SYBEIR TAYLOR | : | No. 2354 EDA 2020 |

Appeal from the Order Entered November 10, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000263-2020,
CP-51-CR-0000272-2020

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SYBEIR TAYLOR | : | No. 2355 EDA 2020 |

Appeal from the Order Entered November 10, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000263-2020,
CP-51-CR-0000272-2020

BEFORE:   BENDER, P.J.E., McLAUGHLIN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY McLAUGHLIN, J.:          **FILED DECEMBER 21, 2021**

The Commonwealth appeals from the November 10, 2020 orders entered by the trial court that granted Sybeir Taylor's pre-trial motion to

_____

[*] Retired Senior Judge assigned to the Superior Court.

quash the criminal information based on a lack of *prima facie* evidence. We reverse and remand.

Taylor was arrested on October 31, 2019, and charged with numerous crimes: two counts each of Robbery, Carrying a Firearm by a Prohibited Person, Carrying a Firearm Without a License, Carrying a Firearm on Public Property in Philadelphia, Possession of an Instrument of Crime, Theft, Receiving Stolen Property, and three counts each of Simple Assault and Recklessly Endangering Another Person.[1]

> A preliminary hearing was held in the Philadelphia Municipal Court on January 10, 2019. Complaining witness, Gabriel Salcedo, an employee at the 7-Eleven convenience store located at 1084 North Delaware Avenue in Philadelphia (hereinafter referred to as the "Delaware Avenue robbery"), testified that at 4:30am on October 29, 2019 an armed man entered the store demanding money as well as Newport cigarettes and Black and Mild cigars. Mr. Salcedo also testified to the existence of video surveillance which was introduced into evidence and shown at the preliminary hearing. Beyond providing the video, Mr. Salcedo was not able to identify the gunman in his testimony.
>
> Next, complaining witness Joseph Cartwright, an employee at the 7-Eleven convenience store located at 6375 Lebanon Avenue in Philadelphia (hereinafter referred to as the "Lebanon Avenue robbery"), testified that at approximately 5:40am on October 29, 2019 an armed gunman, wearing a black and white checkered scarf tied around his face, entered the store demanding money to which Mr. Cartwright complied. Mr. Cartwright further testified to the existence of video surveillance which captured the incident and that video, along with still photographs taken from that video, were introduced into evidence and shown at this preliminary hearing. Similarly, beyond providing the video and still

---

[1] *See* 18 Pa.C.S.A. §§ 3701(a)(1)(ii), 6105(a)(1), 6106(a)(1), 6108, 907(a), 3921(a), 3925(a), 2701(a), and 2705 respectively.

photographs, Mr. Cartwright was not able to identify the gunman in his testimony.

Third, Lower Merion Police Department Officer Robert Maguire testified that at approximately 4:00am on October 30, 2019, he noticed a silver Kia driving at a slow rate of speed and idling for about 20 minutes. Officer Maguire next testified that he called for a marked unit to make contact with the two (2) occupants in the vehicle and that [Taylor] was identified as the driver of the vehicle. On cross-examination, Officer Maguire also noted that while the passenger and owner of the vehicle was detained, [Taylor] was released because there was no reason to detain him further.

Last, Philadelphia Detective Thomas DiLauro of the Southwest Detective Division testified that he executed a search warrant on the silver Kia sedan testified to by Officer Maguire. Detective DiLauro testified that during the search, he recovered black boots, faded blue jeans, a "distinctive" black and white Vans bandana, a loaded 9-milimeter handgun, and "multiple" unopened boxes of Newport cigarettes and Black and Mild cigars. Detective DiLauro further testified that when he first came into contact with [Taylor] a day after his arrest on November 1, 2019, [Taylor] was wearing a black hooded sweatshirt with the "PlayStation" logo on the front and "PlayStation" written down the sleeves. Lastly, Detective DiLauro testified that the silver Kia in question did not belong to [Taylor].

Trial Ct. Op., 2/16/21, at 2-3 (record citations omitted).

After the preliminary hearing, the court bound over the case for trial. Taylor then filed the instant motion to quash the criminal information. After reviewing the notes of testimony from the preliminary hearing, the trial court conducted a hearing on the motion to quash on October 27, 2020. At the hearing, the Commonwealth introduced supplemental evidence of DNA from the Vans bandana that was recovered from the Kia sedan. This evidence showed that the DNA detected in the Vans bandana was consistent with a mixture originating from at least four different males, with the major

component of the mixture being consistent with Taylor's DNA. **See** N.T. Hearing, 10/27/20, at 6. The trial court continued the hearing to view the surveillance video.

At the continuation of the hearing, on November 10, 2020, having watched the surveillance video from the robberies and after hearing argument from the parties, the court stated the following:

> Okay. So, I can see that this is going to need an appeal, so I'm going to give a few findings of fact, and then you can do what you need with it. I am finding that at the top right corner, and the top left corner, and the bottom left corner [of exhibit C-19,] . . . I'm looking at C-10, the top right corner [of C-19], does look like the mask found in C-10, but the mask in C-10 and the mask in the top corner [of C-19] do not look like the same mask in the right side to me. They just don't look like it. This is an [i]dentification issue. They don't look like the same mask. So if the mask found in the car had [Taylor's] DNA on it, and it's not the mask from the robbery, I don't think it's of any moment. So that's number one.
>
> Number two, I'm finding that the t-shirt, the PlayStation hoodie, does look the same. I'm finding that the Commonwealth has presented evidence that [Taylor] wore the same hoodie, was in that car, and that's it. I don't see that the photos look – of the person, of the eyes, of the hue of the skin, I don't see that those two black males look like to me the same person. And if they don't look like to me the same person, and the masks don't look to me the same masks, then that's what preliminary hearings are designed to stop, a case like that going to trial. Granted, the quash. And if you want an appeal date, have at it.

N.T. Hearing, 11/10/20, at 12-13.

The Commonwealth filed a timely motion for reconsideration.[2] On December 8, 2020, it filed a timely notice of appeal. The Commonwealth filed a timely Rule 1925(b) concise statement of errors, and the trial court issued its Rule 1925(a) opinion on February 16, 2021.

The Commonwealth presents one question on appeal: "Did the pre-trial court err in quashing all charges where the Commonwealth proved a *prima facie* case at a preliminary hearing, but the pre-trial court improperly weighed the evidence and made factual conclusions that should have been reserved for the fact-finder at trial?" Commonwealth's Br. at 5.

Whether the Commonwealth has established a *prima facie* case for a charged crime is a question of law; our standard of review is *de novo*, and our scope of review is plenary. **See Commonwealth v. Dantzler**, 135 A.3d 1109, 1112 (Pa.Super. 2016). "The trial court is afforded no discretion in ascertaining whether, as a matter of law and in light of the facts presented to it, the Commonwealth has carried its pre-trial, *prima facie* burden to make out the elements of a charged crime." **Id.** (citation omitted).

> At the pre-trial stage of a criminal prosecution, it is not necessary for the Commonwealth to prove the defendant's guilt beyond a reasonable doubt, but rather, its burden is merely to put forth a *prima facie* case of the defendant's guilt. A *prima facie* case exists when the Commonwealth produces evidence of each of the material elements of the crime charged and establishes sufficient probable cause to warrant the belief that the accused committed the offense. The evidence need only be such that, if presented at

---

[2] The Commonwealth motion for reconsideration did not toll the 30-day period for the notice of appeal. The trial court did not rule on the motion for reconsideration.

trial and accepted as true, the judge would be warranted in permitting the case to go to the jury. Moreover, inferences reasonably drawn from the evidence of record which would support a verdict of guilty are to be given effect, and the evidence must be read in the light most favorable to the Commonwealth's case.

*Commonwealth v. Huggins*, 836 A.2d 862, 866 (Pa. 2003) (citations, brackets, and quotation marks omitted).

The Commonwealth contends that the trial court erred as a matter of law in dismissing the charges against Taylor. According to the Commonwealth, the court failed to review the evidence in the light most favorable to the Commonwealth. Instead, it argues, the court exceeded its authority and assessed and weighed the evidence as fact-finder when it subjectively compared the photographs and concluded that in its opinion the robber did not look like Taylor because he had a "darker hue of skin." Commonwealth's Br. at 37-38 (quoting N.T. Hearing, 10/27/20, at 8). The Commonwealth posits that the court further erred in similarly weighing and assessing the evidence related to the Vans bandana. *See id.* at 40.

The Commonwealth argues that the following evidence was sufficient to establish a *prima facie case*: (1) Taylor was driving a Kia sedan from which police recovered a Vans bandana that could be reasonably found to match the bandana worn by the robber of the Lebanon Avenue robbery and Delaware Avenue robbery; (2) a laboratory report showed that a major component of the DNA mixture on the Vans bandana was consistent with Taylor's DNA; (3) Taylor was arrested wearing a PlayStation hoodie identical to the one worn by

the offender from the Lebanon Avenue robbery; (4) the fade pattern of blue jeans recovered from the Kia sedan matched the faded portions of jeans worn by the robber in both robberies; (5) black boots recovered from the Kia sedan were similar to those worn by the robber in both robberies; (6) the handgun recovered from the Kia sedan was similar to that used in the Lebanon Avenue robbery; (7) police recovered products identical to the proceeds of the Delaware Avenue Robbery—Newport cigarettes and Black and Mild cigars from the Kia sedan. *See id.* at 28-36.

The trial court concluded that although the Commonwealth established that both the Lebanon Avenue and Delaware Avenue robberies occurred, and that police found Taylor the next day in a car containing cigarettes, cigars, a handgun, and a bandana, the Commonwealth failed to provide sufficient identification evidence to prove that Taylor was the assailant in both robberies. *See* Trial Ct. Op., at 8-9.

"To demonstrate that a *prima facie* case exists, the Commonwealth must produce evidence of every material element of the charged offense(s) as well as the defendant's complicity therein." *Dantzler*, 135 A.3d at 1112 (citation omitted). To meet its burden of demonstrating that a *prima facie* case exists, the Commonwealth may rely on the evidence from the preliminary hearing as well as submitting additional evidence. *See id.*

Clothing and physical characteristics may be used in tandem with other circumstantial evidence to validly establish the identity of a perpetrator. *See Commonwealth v. Orr*, 38 A.3d 868, 874 (Pa.Super. 2011) (*en banc*). In

the presence of additional evidentiary circumstances, "any indefiniteness and uncertainty in the identification testimony goes to its weight." **Id.** at 874 (citation omitted).

In **Commonwealth v. Scott**, this Court found that, viewed in a light most favorable to the Commonwealth, the Commonwealth's evidence was sufficient to identify the appellant as an intruder. There the evidence consisted of DNA found on a cigarette butt located near a window of the building, and video surveillance footage showing an intruder who resembled the appellant smoking a cigarette and being chased from the building. **See Scott**, 146 A.3d 775, 778 (Pa.Super. 2016).

Presently, viewing the evidence in a light most favorable to the Commonwealth, and considering the modest threshold of proof for a *prima facie* case, we conclude that the Commonwealth produced evidence of every element of the crimes, including Taylor's complicity therein. Given that evidence, it is reasonable to infer that Taylor more likely than not committed both the Lebanon Avenue and Delaware Avenue robberies. His DNA was found on the Vans bandana, which it is reasonable to infer was worn during both robberies. Police found Taylor driving a Kia sedan which contained blue jeans and boots similar to those worn during both robberies, as well as Newport cigarettes and Black and Mild cigars consistent with the stolen goods from the Delaware Avenue robbery. Finally, when police arrested Taylor, he was wearing a distinctive PlayStation sweatshirt matching that worn by the robber in the Lebanon Avenue robbery.

This evidence, and the reasonable inferences taken therefrom, when viewed in a light most favorable to the Commonwealth, establishes a *prima facie* case that Taylor was more likely than not the individual who committed both the Lebanon Avenue and the Delaware Avenue robberies. Accordingly, we conclude that the trial court committed an error of law in quashing the charges against Taylor.

Orders reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/21/2021