J-S17004-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
KELIN JARMESS-WADE COLEMAN :
:
Appellant : No. 695 WDA 2022

Appeal from the Judgment of Sentence Entered October 13, 2021
In the Court of Common Pleas of Beaver County Criminal Division at
No(s): CP-04-CR-0002033-2020

BEFORE: LAZARUS, J., OLSON, J., and KING, J.

MEMORANDUM BY LAZARUS, J.: **FILED: June 15, 2023**

Kelin Jarmess-Wade Coleman appeals *pro se* from the judgment of sentence, entered in the Court of Common Pleas of Beaver County, following his conviction of possession of a firearm (prohibited)[1] and recklessly endangering another person (REAP).[2] After careful review, we affirm.

In the early morning hours of July 11, 2020, the victim, Marcus Motton, was struck by a bullet in the upper thigh of his left leg; the incident occurred outside of the Whiskey Rhythm Bar located in Beaver County. As Motton, a bar patron, was being escorted out of the bar, Coleman encountered him and the two exchanged words. Motton then punched Coleman in the face; a scuffle

---

[1] 18 Pa.C.S.A. § 6105(a)(1).

[2] *Id.* at § 2705.

ensued, and the two were separated. Motton was escorted to his car. As Coleman was also being escorted out of the bar,[3] the shot was fired.

At the time of the shooting, another fight was also in progress at the bar. Andrew Troy, a bouncer at the bar who was involved in breaking up the other fight, identified Coleman as an individual holding a gun after the shot was heard.[4] Specifically, on July 11, 2020, Troy identified a photograph of Coleman from a photo array created by the Monaca Borough Police Department. *See* Photographic Line-Up, 7/11/20, at 1 (Troy averring "after viewing a photo line-up [he had] chosen one of the subjects as being involved in the incident being investigated" and that he "made this selection entirely of [his] own free will[,] signed th[e] statement as verification[, and] ha[s] not been coached or threatened, nor [has he] been under duress because of the incident"). Troy also gave the following written statement to the police:

---

[3] Coleman already had been asked to leave the bar for engaging in an altercation with a female patron. As he was being escorted out of the bar, he encountered Motton and the fracas ensued.

[4] The trial court and the Commonwealth both state that Troy saw Coleman in possession of a gun at the bar after the shot was fired at the victim. However, there was no testimony that Troy actually saw Coleman shoot the victim with the gun. *See* Commonwealth's Brief, at 12 ("Specifically, on July 11, 2020, Andrew Troy saw [Coleman] possessing a gun."); Trial Court Opinion, 10/13/22, at 9 ("When [Troy] turned to see where the shot came from, that is when Mr. Troy saw [Coleman] 'with a gun.'")

> I saw a fight [e]nsue in the bar. [T]he 2 fighters went outside[. T]he guy who shot the victim went back into the bar. I was standing outside [b]reaking up another [f]ight. That[']s when I heard the [s]hot. [I] look[ed] to my right and I s[aw] the shooter pointing the gun at the victim [and] then he ran off.

Signed Witness Statement by Andrew Troy, 7/11/20 (admitted as Commonwealth Exhibit 2).

Motton described the shooter as a black male wearing white pants, a white shirt, and dreadlocks. Motton told police officers that the perpetrator had fled the scene toward the City of Aliquippa in a white Dodge Durango. **See** Commonwealth's Affidavit of Probable Cause for Search Warrant, 7/11/20, at 1. A cellular phone recording taken by a bystander showed a black male wearing a white shirt, white pants, and blue underwear as the suspected shooter. Several witnesses at the scene similarly described the shooter as a black male with dreadlocks wearing a white shirt and white pants.

Another witness identified the shooter through a Facebook account. This Facebook page contained a photo of a black male, posted on July 10, 2020, at approximately 11:00 PM, who was wearing white pants and a white shirt, and dreadlocks—identical to the appearance of the male in the cell phone recording. Sergeant Higby[5] identified the owner of the Facebook account as Coleman, an individual who hailed from Chicago and with whom he has had "numerous dealings." **Id.** at 2. Coleman had prior felony convictions from

---

[5] The certified record does not contain information regarding Sergeant Higby's first name.

Illinois[6] that prohibited him from lawfully possessing a firearm in Pennsylvania.

Motton confirmed to the police that the owner of the Facebook account was the individual that shot him. Ayshlyn Beightley, the owner of Whiskey Rhythm,[7] positively identified Coleman from a police photographic line-up, as "the [one] who I kicked out of the bar [] who [had been] in a fight [with the victim before the shooting[.]" N.T. Non-Jury Trial, 7/30/21, at 46. Beightley testified that she did **not** see Coleman in possession of a firearm on the evening of the incident. *Id.* at 52.[8]

Coleman was charged with aggravated assault (with indifference to life), possession of a firearm—prohibited, REAP, simple assault (attempts by physical menace), and attempt to cause serious bodily injury to another.[9] On December 23, 2020, a preliminary hearing was held, at which the Commonwealth played two videos. The first video, surveillance footage from a neighboring business, depicts a crowd of people gathered outside the bar,

---

[6] On December 27, 2011, Coleman was sentenced to four years' imprisonment in Illinois for aggravated robbery, a Class 1 felony.

[7] Beightley also worked as a bartender at Whiskey Rhythm.

[8] Contrary to her trial testimony, Beightley's statement to police indicated that "the guy with the dreads tried to sneak back into the bar and came walking back over within seconds and fired a shot at the tall black guy, and then kept the gun pointed at him for a second and then ran away." Ayshlyn Beightley Voluntary Statement, 7/11/20.

[9] Both assault charges were *nolle prossed* prior to trial.

shows a "flash" occur, and then an individual, identified by the Commonwealth as Coleman, is seen walking away from the area. In the second video, taken from a social media account, an individual the Commonwealth also identifies as Coleman is viewed in the area of the bar and then a loud noise is heard.

Neither the victim nor any witnesses appeared at Coleman's preliminary hearing. The aforementioned charges were held over for court and Coleman was formally arraigned on January 27, 2021.

On March 1, 2021, Coleman filed a pre-trial writ of *habeas corpus*[10] claiming the Commonwealth's evidence failed to show that he was the one who committed the charged offenses. At the pre-trial *habeas corpus* hearing, held on May 18, 2021, Troy testified that in his July 11, 2020 signed statement he made to police, he identified Coleman as "[t]he guy who shot the victim [and] went back into the bar. . . . I was standing outside the break, breaking up another fight, that's when I heard the shot, looked to my right, and I s[aw] the shooter pointing the gun at the victim, then he ran off." N.T. Pre-Trial Hearing, at 5/18/21, at 17. Moreover, Troy testified that while he initially identified another individual as the shooter, he ultimately identified Coleman in the fourth picture of an 8-picture photo array lineup. *Id.* Troy testified that the officer who administered the lineup told Troy to "keep looking at the

---

[10] "A pre-trial *habeas corpus* motion is the proper means for testing whether the Commonwealth has sufficient evidence to establish a *prima facie* case." **Commonwealth v. Dantzler**, 135 A.3d 1109, 1112 (Pa. Super. 2016) (en banc).

pictures," after he identified the first individual. *Id.* at 19. Troy, however, also testified at the *habeas* hearing, that he could not "definitively state who the shooter was since [he] picked out two individuals," *id.* at 20, and that "[he] was torn between the two [and] still [was] not sure[, but that he] felt like he had to pick one." *Id.* at 22. Moreover, on recross-examination counsel asked Troy "When [the officer] indicates to you let's keep looking [at more photos in the line[-]up], did you feel like you made an incorrect choice based on that statement?" *Id.* at 23-24. Troy, responded, "Yes." *Id.* at 24.

Following the pre-trial hearing, the court denied relief with respect to all charges, reasoning as follows:

> [Coleman's] only argument is that the Commonwealth's evidence fails to show probable cause that he committed the criminal offenses charged. The Commonwealth's evidence is two videos, a photograph, and witness testimony. The photograph of [Coleman] appears to match the individual seen in the video. The video shows the individual walk toward the direction of where the gunshot is heard. Since the individual in the photograph and the individual in the video appear[] to be [Coleman], and a gunshot is heard in the video in the area where [Coleman] appears to be, there is probable cause evidence that [Coleman] was the person who committed the charged crimes. Troy's identification of [Coleman] from the photo array further supports the probable cause determination. Therefore, his petition for a writ of *habeas corpus* is denied.

Memorandum Opinion and Order, 5/26/21, at 3. On July 6, 2021, Coleman pleaded not guilty and waived his right to a jury trial.

On July 30, 2021, a non-jury trial was held, after which the trial court convicted Coleman of the above-stated crimes. On October 13, 2021, Coleman was sentenced to a term of 84-192 months' incarceration and

deemed ineligible for the Recidivism Risk Reduction Incentive Program.[11] On October 22, 2021, Coleman filed post-sentence motions,[12] which were denied on March 2, 2022.[13]

After the trial court reinstated his appellate rights *nunc pro tunc*, Coleman filed a timely *pro se* notice of appeal.[14] Coleman was granted an extension, for good cause shown, to file his Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal by October 8, 2022. On October

_____

[11] **See** 61 Pa.C.S.A. §4501 *et seq*.

[12] On October 25, 2021, the trial court granted Coleman an additional 30 days to file supplemental post-trial motions.

[13] On March 10, 2022, counsel filed a motion to withdraw and have new counsel appointed to assist Coleman in perfecting an appeal. On March 29, 2022, the court granted counsel leave to withdraw his appearance and appointed an attorney from the Beaver County Public Defender to represent Coleman on appeal. On May 6, 2022, new counsel filed a Post-Conviction Relief Act petition (PCRA) seeking reinstatement of Coleman's right to file post-sentence motions or a direct appeal *nunc pro tunc*.

[14] In a May 9, 2022 order, the trial court granted Coleman's petition for post-conviction relief and reinstated his right to file post-sentence motions and a direct appeal *nunc pro tunc*. Coleman timely filed a *pro se nunc pro tunc* notice of appeal on June 6, 2022. **See Commonwealth v. Williams**, 151 A.3d 621 (Pa. Super. 2016) (*pro se* notice of appeal exception to general rule prohibiting hybrid representation). On June 10, 2022, counsel file a motion to withdraw, stating that Coleman sought his withdrawal. However, on June 27, 2022, Coleman filed an application for remand in this Court so that the trial court could hold a **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998), hearing and permit him to proceed *pro se* on appeal. Our Court granted the application and, on remand, a **Grazier** hearing was held after which the trial court concluded that Coleman made a "knowing, voluntary, and intelligent" waiver of his right to counsel, permitted appellate counsel to withdraw, and allowed Coleman to proceed *pro se*.

3, 2022, Coleman filed his *pro se* Rule 1925(b) statement. In mid-January of 2023, while preparing his appellate brief, Coleman received a copy of a notarized affidavit from Troy admitting that, as a result of police pressure, he had lied under oath when he testified at trial that he was certain Coleman was the shooter. Coleman filed a *pro se* "Petition for Remission of the Record and Remand to the Lower Court," **see** Pa.R.Crim.P. 720(c), which our Court denied, via a *per curiam* order, without prejudice to re-raise the matter before the panel assigned to determine the merits of the appeal. Order, 2/7/23.

On appeal, Coleman raises the following issues for our review:

(1) Does the January 11, 2023 affidavit of Andrew Troy[,] recanting his trial testimony[,] constitute after-discovered evidence worthy of a remand for an evidentiary hearing and/or new trial?

(2) Is [Coleman] entitled to a new trial and/or a judgment of acquittal where the evidence presented by the Commonwealth was insufficient as a matter of law to support each element[15] of the charge of [] 18 Pa.C.S.[A.] § 6105(a)(1), possession of a firearm prohibited[?]

Appellant's *Pro Se* Brief, at 6 (renumbered for ease of disposition).

Coleman has raised the remand issue in his appellate brief, claiming that "[w]ithin two weeks of receiving [Troy's] affidavit [he] filed an application for

_____

[15] In his Rule 1925(b) statement, Coleman "[s]pecifically [identifies] the elements of identity and the actual possession of a weapon" as those being challenged with regard to his sufficiency claim. Thus, we confine our review to those elements, as they are the ones preserved for purposes of appeal. **Commonwealth v. Gibbs**, 981 A.2d 274, 281 (Pa. Super. 2009) (to preserve challenge to sufficiency of evidence on appeal, appellant's Rule 1925(b) statement "must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient").

remand pursuant to Pennsylvania Rule of Criminal Procedure 720(c)." *Id.* at 36. *See* Pa.R.Crim.P. 720(c) ("After-Discovered Evidence. A post-sentence motion for a new trial on the ground of after-discovered evidence must be filed in writing promptly after such discovery."). *See also* Pa.R.Crim.P. 720, Comment ("after-discovered evidence discovered during the direct appeal process must be raised promptly during the direct appeal process, and should include a request for a remand to the trial judge"). In response to Coleman's remand application, the Commonwealth conducted a video-recorded interview[16] with Troy regarding the information contained within his affidavit. In a recorded statement, following the administration of *Miranda*[17] rights, Troy claimed:

- Coleman contacted him and provided him the affidavit to sign;
- Troy did not read through the entire affidavit before signing it;
- Troy did not say or write the phrase "jam[ming] myself;" and
- Troy unequivocally saw Coleman possess the gun during the incident in question.

Commonwealth's Response to Petition for Remand, 2/8/23, at ¶¶ 9, 13; *see also* Andrew Troy Video Interview, 2/3/23.

In the case at bar, the after-discovered evidence was brought to light during the direct appeal stage—the *nunc pro tunc* direct appeal was filed on June 6, 2022 and the affidavit was filed on January 11, 2023. Coleman

---

[16] The Commonwealth asserts that it provided Coleman with video of this interview.

[17] *Miranda v. Arizona*, 384 U.S. 436 (1966).

followed the procedure as set forth in Rule 720(c) by timely petitioning this Court *pro se*, on February 2, 2023, for a remand of the instant appeal to the trial court for its consideration. Although we did not grant the petition, we left the issue open without prejudice to Coleman's right to raise the issue in his brief to this Court on appeal. He has now done so and has reiterated his request for an evidentiary hearing with regard to the averments contained in Troy's affidavit—specifically, that Troy did not see who fired the shot, did not see the gun, and only gave testimony to the contrary "because [he] was told by the District Attorney and Officer Mosura that [he] was going to jam [him]self up if [he] didn't." Troy Affidavit, 1/11/23, at ¶¶ 6-7.

To warrant relief, an appellant raising a claim of after-discovered evidence must satisfy a four-pronged test:

> (1) the evidence could not have been obtained before the conclusion of the trial by reasonable diligence; (2) the evidence is not merely corroborative or cumulative; (3) the evidence will not be used solely for purposes of impeachment; and (4) the evidence is of such a nature and character that a different outcome is likely. At an evidentiary hearing, an appellant must show by a preponderance of the evidence[,] that each of these factors has been met in order for a new trial to be warranted. Even if it would appear likely that a new trial is warranted, procedure demands that the lower court develop the record and make that call in the first instance.

***Commonwealth v. Rivera***, 939 A.2d 355, 359 (Pa. Super. 2007). "The [after-discovered evidence] test is conjunctive; the [petitioner] must show by a preponderance of the evidence that each of these factors has been met in order for a new trial to be warranted." ***Commonwealth v. Padillas***, 997

A.2d 356, 363 (Pa. Super. 2010). In addition, the after-discovered evidence must be producible and admissible. ***Commonwealth v. Small***, 189 A.3d 961, 972 (Pa. 2018).

Notably, both pre-trial and at trial, defense counsel cross-examined Troy regarding his identification of Coleman. ***See*** N.T. Non-Jury Trial, 7/30/21, at 74-79. However, Coleman claims that the after-discovered evidence in Troy's affidavit explains "the reason **why** Troy ultimately overcame his reluctance to circle [] Coleman's picture in the investigator[']s photo array. [In particular, i]n this affidavit, Mr. Troy now confesses that police pressure was responsible for his sudden certitude that it was Mr. Coleman doing the shooting." Petition for Remand, 2/8/23, at ¶ 10 (emphasis added).

Based upon the information in the briefs and certified record, we find it not only likely that Coleman, with reasonable diligence, could have discovered prior to trial the alleged police pressure Troy claims was placed upon him to positively identify Coleman as the shooter, but that he in fact did make such an allegation at his pre-trial *habeas corpus* hearing. At that hearing, defense counsel extensively examined Troy regarding: his initial identification of another individual as the perpetrator; his understanding that he "had to pick" one of the individuals in the eight photos in the array as the shooter; and the investigating officer's tactics that made Troy "feel like he made an incorrect [initial] choice based on [the officer's statement,] 'let's keep looking.'" N.T. Pre-Trial Hearing, 5/18/21, at 22-23. Additionally, defense counsel rigorously cross-examined Troy at trial regarding the recantation of his photo

identification from his pre-trial hearing and, again, tried to establish that Troy felt pressured into positively identifying an individual from the array and that he was told by an officer to continue to look at the remaining pictures after positively identifying a different individual. N.T. Non-Jury Trial, 7/30/21, at 63-79, 86-87. Because the after-discovered evidence test is conjunctive, *Padillas*, *supra* at 363, Coleman's claim fails and he is not entitled to a remand for a hearing on the issue.

In his next claim, Coleman alleges that he should be granted a new trial where the Commonwealth's evidence was insufficient as a matter of law to support his section 6105(a)(1) conviction for possession of a firearm prohibited. Specifically, he challenges the Commonwealth's proof of his identity as the one who possessed a gun.

Pursuant to section 6105(a)(1):

> A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

18 Pa.C.S.A. § 6105(a)(1). Thus, to be convicted on a charge of persons not to possess firearms, the Commonwealth must prove the following two elements: (1) a prior conviction for an enumerated offense and (2) the possession or use of a firearm. *See id.* Because Coleman does not contest that he had prior convictions for enumerated offenses, we will confine our

- 12 -

review to the second element of section 6105(a)(1)—whether the Commonwealth proved that he possessed or used a firearm.

Coleman argues that "[t]here is no corroborating, circumstantial, forensic, or video evidence that supports [Troy,] who contradicts his own testimony that [Coleman] had a gun and was, therefore, the shooter." Appellant's *Pro Se* Brief, at 34. Specifically, Coleman claims that the verdict "cannot rest on mere surmise, speculation, conjecture[,] or speculation." **Id.**

> When reviewing an appeal that is based on the sufficiency of the evidence, "[the court] view[s] the evidence in the light most favorable to the Commonwealth, which has won the verdict. [The court] then determine[s] whether the evidence is sufficient to permit a jury to determine that each and every element of the crimes that is charged is established beyond a reasonable doubt. Although guilt cannot be found from mere surmise, conjecture or speculation, circumstantial evidence may sustain a conviction if the totality of the evidence establishes guilt beyond a reasonable doubt. Issues of credibility and of the weight to be assigned to evidence are for the [factfinder], wh[o] is free to believe all, part or none of the testimony. It is not necessary that the evidence be totally incompatible with innocence as long as the evidence is not so weak and inconclusive that[,] as a matter of law[,] no probability of fact can be drawn from the combined circumstances.

**Commonwealth v. Spencer**, 639 A.2d 820, 822-23 (Pa. Super. 1994) (citations omitted).

While it is true that the Commonwealth cannot prove a defendant's guilt based on "mere surmise or conjecture," it is well established that "a criminal conviction may rest upon wholly circumstantial evidence." **Commonwealth v. Stores**, 463 A.2d 1108, 1112 (Pa. Super. 1983). Here, both the victim and Troy stated that they saw Coleman holding a gun outside the bar at the time

of the shooting. Troy testified that he identified Coleman from a photo lineup as the person holding the gun immediately after he heard the shot outside the bar. Moreover, several witnesses testified that they saw someone fitting Coleman's physical description holding a gun around the time that the shot was fired outside the Whiskey Rhythm. As the factfinder, the trial judge was free to assess the credibility of the witnesses and the weight to be assigned to the evidence. ***Spencer***, ***supra***. We will not disturb these findings, where the evidence is supported in the record.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/15/2023